CULPEPPER, Judge.
In this workmen’s compensation suit the defendant has appealed from a judgment of the lower court awarding plaintiff benefits for permanent and total disability. Plaintiff has not answered the appeal and therefore we do not have to consider the district court’s refusal of penalties and attorneys’ fees.
Defendant’s first contention is that no compensable accident was proved. The injury is alleged to have occurred on-. *631 Januaiy 21, 1960 while plaintiff was employed as a painter by the defendant’s insured, S. J. Lemoine Company. The only direct proof of the accident is plaintiff’s own testimony. However, our learned brother below recognized that the testimony of the plaintiff alone is sufficient to establish the accident if his story is plausible and consistent, is supported by surrounding circumstances and is not substantially discredited. Gilbeaux v. Trinity Universal Insurance Co., La.App., 134 So.2d 717 (2nd Cir.App.1961); Water v. L. L. Brewton Lumber Co., La.App., 120 So.2d 842 (2nd Cir.App.1960) and the many cases cited therein; Malone’s Louisiana Workmen’s Compensation Law and Practice, Sec. 252. In a well considered written opinion the trial judge disposed of this factual issue by the following reasoning which we adopt as our own:
“Plaintiff, a painter, testified that he was helping another painter, Mr. Billedeaux, and a colored helper move a scaffold at quitting time in a hall at the Reeves Gymnasium when his feet became tangled in a drop cloth and he felt a hot, burning pain in his back. Plaintiff stated that he dropped the scaffold and said something about his back being hurt. He explained that he is not certain that Mr. Billedeaux or the colored boy heard him because of noise from an air compressor nearby. At that moment the painting foreman, Mr. Rabalais, entered and announced that it was quitting time. Mr. Cloud testified that he left immediately and without speaking to anyone.
“Mr. Billedeaux testified that he and a colored boy were moving a scaffold with Mr. Cloud’s assistance on the day in question near quitting time in the hallway of the Reeves Gymnasium. He could not remember positively whether there were or were not drop cloths on the floor on the day in question. Mr. Billedeaux testified that he did not hear Mr. Cloud complain of his back, but he confirmed the fact that at the time of the alleged accident there was an air compressor nearby which made a lot of noise so that it would have been difficult to hear Mr. Cloud. Mr. Billedeaux stated that he did not feel Mr. Cloud drop his end of the scaffold but he explained that it could have happened without his knowing of it because the scaffold was being moved by jerky lifts. Mr. Billedeaux conformed generally Mr. Cloud’s testimony concerning the foreman’s announcement of quitting time, although there seem to be minor conflicts concerning the details of this event. Mr. Billedeaux testified that he and Mr. Cloud walked to a shed or storage room together at quitting time on the day in question where Mr. Billedeaux changed clothes and that he heard no complaints from Mr. Cloud during that time. This directly contradicts the plaintiff’s testimony that he went straight home and did not have an opportunity to tell anyone about the alleged accident.”
“The plaintiff’s wife corroborated her husband’s testimony that he went to bed when he arrived at home from work on January 21, 1960, because his back hurt him.
“Dr. Hargrove testified that Mr. Cloud visited him for treatment of a back injury which plaintiff stated at that time was received the day before. Dr. Hargrove’s testimony cannot be used, however, to fix the date of plaintiff’s injury because Dr. Hargrove could not testify as to the exact date of plaintiff’s first visit. Dr. Har-grove did not keep any records on this patient and although plaintiff visited Dr. Hargrove on many occasions, the doctor did not make any charge for his services.
“Several neighbors and friends of the plaintiff testified that subsequent to the alleged accident he complained of his inability to work because of back trouble. All the physicians involved were also given the same history by Mr. Cloud as to the cause of his back injury. All of the doctors who expressed a medical opinion except Dr. Morin made diagnosis of lumbo-sacral sprain or strain although Dr. Kings- *632 ley felt that pain at the time of his examination was not caused by the alleged back injury. This corroborates plaintiff’s testimony that he was injured but it adds little to whether or not the injury was received as he alleges. On the other hand the medical evidence does not contradict Mr. Cloud’s explanation of the manner in which he received his injury.
“Plaintiff’s testimony as to when and to whom he reported the injury is very confusing. Mr. Cloud did not attempt to report the accident Friday, the day after it allegedly happened, but he states that on Monday he reported it to Mr. LeBert, the union business agent. He also states that he went to the Reeves job that Monday and told the timekeeper who replied that he had no blanks at the time. Mr. Le-Bert’s testimony affirmed the report to him on Monday, but Mr. Firman, the supervisor of the job, stated that he was on the job all day that Monday and did not see Mr. Cloud that day. Mr. Firman conceded, however, that Mr. Cloud could have been present on the job without his knowing it. Mr. Firman testified that there was no bookkeeper on the job and that he kept the time himself. He did, however, state that Mr. Cloud reported the accident to him on Wednesday following the alleged event, and that his reply was that he was out of blanks at the time. So Mr. Firman confirmed the substance of the conversation which Mr. Cloud thought was with the timekeeper, but his testimony is contradictory to that of the plaintiff’s as to the date of the conversation. Mr. Firman did state that Mr. Qoud reported the accident as having occurred on the Wednesday prior to the conversation instead of Thursday as alleged in this suit and as stated by Mr. Cloud.
“Mr. Rabalais stated that it was at least eight days after the alleged accident before Mr. Cloud saw him but explains this by stating that he was not at the job during the week following the alleged accident. Mr. Cloud seemed uncertain a.s to the exact date he reported the accident to Mr. Rabalais although he did testify that he went back to the job several times before he found Mr. Rabalais.
“Mr. Cloud explained his failure to report the accident immediately by saying that he did not deem it serious at the time. Defendant attempts to discredit this testimony by pointing out that plaintiff and his wife testified that plaintiff went to bed when he arrived home on the day in question because of the pain, and that he went to the doctor the next day. Tire court does not feel, however, that this testimony is necessarily contradictory or that it discredits plaintiff’s testimony because it did take a while for Mr. Cloud to get home from work and back sprains and strains do not, many times, develop pain immediately. Plaintiff’s belief that the injury would clear up after a few days is plausible, especially since plaintiff has never before suffered a back injury.
“The cases of Carter v. Dinkeldein, La.App., 125 So.2d 201, and Card v. Southern Builders, Inc., La.App., 117 So.2d 675, relied upon by counsel for defendant in his brief, involved circumstances favoring the defendants much more strongly than the case at bar. In both cases the claimants continued working for several days after the alleged accidents.
“The Court also considers it important to note that Mr. Cloud has never before made a workmen’s compensation claim.
“After carefully reviewing and weighing the evidence, it is the decision of this Court that plaintiff has carried his burden of proving that he sustained a lumbo sacral strain or sprain on January 21, 1960, while helping lift a scaffold in the course of his employment with S. J. Lemoine Company. Defendant did not offer evidence which tended to directly disprove the plaintiff’s story. The contradictions actually achieved by the defendant were not sufficient for this Court to hold that plaintiff’s testimony together with the corroboration offered did not satisfy plaintiff’s burden of proof. The test for the *633 burden of proof is that the plaintiff’s testimony is sufficient if plausible, consistent and supported by other circumstances, and this test has been met in the case at bar.”
Defendant’s next contentions are as regards the duration of plaintiff’s disability. Defendant’s first position is that plaintiff’s disability ceased before the date of trial on January 23, 1961. Next it argues that weekly benefits should be limited to the “probable duration of disability” under LSA — R.S. 23:1222 and finally that in no event should benefits be awarded beyond the maximum of 300 weeks for temporary total disability as provided in LSA-R.S. 23:1221(1). In considering these issues it is perhaps best that we first discuss briefly the expert medical testimony.
Plaintiff called three expert medical witnesses, Dr. R. E. Dupre, a general practitioner, and Dr. Paul M. Davis and Dr. George P. Schneider, both orthopedic specialists. Dr. Dupre first examined plaintiff on January 26, 1960 which was five days after the accident, and diagnosed a lumbo-sacral strain for which he prescribed medicine. As the treating physician, Dr. Dupre referred plaintiff to Dr. Paul M. Davis, an orthopedic specialist, who examined plaintiff on February 5, 1960, and also diagnosed a lumbo-sacral sprain, aggravated by the fact that plaintiff’s left leg is 1J4 to lt/2 inches shorter than the right, and his left knee almost completely stiff, as a result of a IS year old gunshot wound to the left thigh. Dr. Davis recommended a lumbo-sacral corset to support the back during rehabilitation and also recommended a ¡J-íjths inch lift to be placed in the heel of his left shoe to compensate to some extent for the shortness of the left leg. Dr. Davis estimated that with this treatment “his condition should clear in two or three weeks and his back should be as good as previously”.
Plaintiff obtained and wore the back brace but he did not obtain the lift for his shoe heel because Dr. Dupre was of the contrary opinion that due to the stiffness in plaintiff’s left knee, and the long period of time during which plaintiff had become accustomed to walking with a shortened leg, such a lift might retard rather than hasten plaintiff’s recovery. Dr. Dupre continued to see and treat plaintiff for several months, actually placing him in the hospital for a two-day period during March of 1960, and last examined plaintiff in November of 1960 at which time he could find no objective symptoms and didn’t know why plaintiff hadn’t recovered but, based purely on subjective complaints of pain, opined that plaintiff was still disabled.
Dr. George P. Schneider, an orthopedic specialist, examined plaintiff on December 29, 1960 and diagnosed a “chronic sprain at the fourth lumbar level with the short leg causing prolongation of his symptoms.” ■Dr. Schneider’s opinion is succinctly stated in the following quotation from his testimony :
“ * * * the left heel might be a valuable adjunct in rehabilitating him. I felt that he should be continued under a routine of conservative and if possible, rehospitalization should be carried out with traction in support of measures to be again instituted which I felt would definitely expedite his recovery. I felt that his disability under continued routine of conservative management, as outlined, would probably continue another three to four months, but at the end of that time, if the treatments were instituted, I could not see why recovery should not have taken place with no residual disability. I did not feel that there was any indication of any underlying disk pathology or any other secondary complicating factors present other than the shortening of the left lower extremity, as noted.”
The defendant introduced the testimony of Dr. Daniel M. Kingsley, Dr. Norman Paul Morin and Dr. Charles V. Hatchette, *634 all specialists in orthopedics. Dr. Kings-ley examined the plaintiff on September 9, 1960 and diagnosed “ * * * a chronic strain of the back because of the shortening of the left lower extremity, but saw no evidence of injury from the accident in which he jerked his back.” It was Dr. Kingsley’s opinion that plaintiff had fully recovered and was able to return to work within three to six weeks following the date of the accident.
Dr. Hatchette examined plaintiff on September 12, 1960 and diagnosed that plaintiff “was recovering satisfactorily from what must have been a lumbo-sacral injury in January of 1960.” Dr. Hatchette thought that it was unusual for this type of injury to last as long as it had, but that the shortened left leg possibly prevented normal recovery. The essence of Dr. Hatchette’s prognosis for recovery is found in the following quoted portion of his testimony:
“At most, I felt that he deserved approximately one to three months further disability. He was practically ready to return to work at that time and I did not feel that there was anything that was of a serious nature in his back region. The injury had been confined to the soft tissues of his low back and'should be thoroughly and completely recovered within the one to three month period. I could find no evidence to indicate permanent disability in this man’s back and I felt that temporary disability would certainly be gone within a period of three months’ time.”
Dr. Morin examined plaintiff on January 4, 1961 and expressed the opinion that plaintiff had no residual disability attributable to the January 21, 1960 injury and that he could return to his previous employment.
On the issue of disability the lay testimony was to the effect that prior to the accident plaintiff had worked regularly but that since the accident he has complained of pain and has not performed any hard physical labor.
Under the above evidence it is clear that plaintiff was totally disabled as a result of the accident, but there is a serious question as to the duration of this disability. The expert medical testimony is in serious conflict. Dr. Kingsley and Dr. Morin found no disability on their examinations in September, 1960 and January, 1961, respectively. The remaining doctors found disability but their estimates as to its duration varied. Dr. Dupre, the treating physician, said plaintiff was still disabled in November of 1960 and that this condition would continue for an indefinite period, but that most probably in time it would clear up. Dr. Davis predicted plaintiff’s recovery within two or three weeks after February 5, 1960. However, Dr. Hatch-ette, a defense witness, found plaintiff still disabled in September of 1960 and estimated his recovery in one to three months. Dr. Schneider found plaintiff disabled in December of 1960, one month before trial, and said he would recover in three or four months, but only with treatment. The lay witnesses all support disability to date of trial. The trial judge found plaintiff disabled. In view of all these circumstances we cannot say the lower court committed manifest error in finding plaintiff disabled through the trial date.
Able counsel for the defendant argues next that even under the testimony of Dr. Schneider, the probable duration of disability is definitely fixed at three to four months from the date of his examination on December 29, 1960, which places the date of recovery no later than the end of April, 1961, and justifies recovery of only about IS months in workmen’s compensation benefits. As pointed out by the trial judge, the answer to this argument is that such a probable duration of disability was estimated by Dr. Schneider only with routine conservative treatment including hospitalization and traction. In this case the defendant, having denied a *635 compensable accident, has, from the outset, refused any medical treatment for plaintiff and it would therefore be impossible for this court in the instant judgment to determine with reasonable certainty the time in which such medical treatment will begin, because of the delays incident to rehearings, applications for writs, etc. In our opinion, the probable duration of disability, conditioned as it is on further treatment, which will not begin until after judgment becomes final, is not sufficiently certain for the application of LSA-R.S. 23:1222.
We are further fortified in this conclusion by the conflicting estimates of the expert medical witnesses as to the probable duration of plaintiff’s disability. Dr. Davis estimated two or three weeks after February S, 1960. Dr. Dupre opined that the duration of disability was indefinite although temporary. Dr. Kingsley and Dr. Morin were of the opinion that plaintiff had already recovered as of the respective dates of their examinations on September 9, 1960 and January 4, 1961. Dr. Hatchette estimated plaintiff’s recovery in one to three months after his examination of September 21, 1960. As stated above, Dr. Schneider estimated that plaintiff would recover within three to four months after his prescribed treatment started. Under these circumstances also, it is our opinion that the probable duration of disability is not sufficiently definite for the application of LSA-R.S. 23:1222. A correct statement of the application law is found in Whiddon v. Concrete Pipe Products Co., La.App., 78 So.2d 439 (1st Cir.App.1955) in which the court held as follows:
“We believe that when the period of disability is indefinite, the correct procedure is to allow compensation during disability, not to exceed the statutory maximum; Vilce v. Travelers Ins. Co., La.App., 24 So.2d 485, Id., La.App., 25 So.2d 256; Gilmore v. George W. Garig Transfer, Inc., La.App., 33 So.2d 99; Colbert v. Smith & Campbell, La. App., 39 So.2d 757; Strother v. Standard Accident Insurance Co., La.App., 63 So.2d 484. The employee is thus protected against the possibility that the disability may persist beyond any arbitrary period fixed actually by mere speculation of the medical experts, while on the other hand the employer is protected since he may re-open the matter for trial after six months following the date of final rendition of the judgment under LSA-R.S. 23:-1331 (if and when the condition of the employee changes for the better).”
Defendant’s contention that recovery should be denied because of plaintiff’s failure to cooperate in the prescribed medical treatment is ably answered by the following portion of the trial court’s well considered, written opinion which we adopt as our own:
“Defendant’s second reason why plaintiff should not be entitled to total and permanent compensation is that he refused to cooperate with his own doctor, Dr. Davis, in that he did not obtain, procure and use the prescribed heel lift. Doctors Schneider, Kingsley, and Morin stated that the recommendation of a heel lift was medically sound and would probably speed recovery. Dr. Hatchettte said that it was a good idea but not absolutely necessary. Dr. Dupre testified that he was not certain whether a heel lift would speed Mr. Cloud’s recovery. It is the opinion of this Court that Mr. Cloud cannot be considered as failing to cooperate when the treating physician, Dr. Dupre, was not confident that the treatment would help, and when the medical evidence does not clearly establish that recovery time would have been materially reduced if claimant had cooperated. Mr. Cloud explained his failure to get a heel lift by stating that his understanding was that it was to go on his work shoes, but since he has been unable to work, *636 such action would be of no value. This explanation is not so unreasonable as to be beyond belief. Plaintiff states that he did obtain and use the back brace recommended by Dr. Davis, therefore he cannot be branded as entirely uncooperative. In addition, the defense of failure of plaintiff to cooperate is not available in this case because neither the employer nor the insurer offered or indicated that they would furnish any medical assistance or treatment. Plaintiff has not failed to cooperate because defendant has made no requests which may serve as the basis for cooperation. No offer was made by defendant or the employer to have a proper heel lift installed on plaintiff’s shoes. Defendant has failed to establish the defense of failure of plaintiff to cooperate because it has not offered medical assistance and it has failed to prove that failure to wear a heel lift is the cause of plaintiff’s continued disability.”
However, we must disagree with our learned brother below as to his award of benefits during disability not to exceed 400 weeks, as in the case of permanent disability, because the record does not show plaintiff’s disability will in fact be permanent. All of the expert medical witnesses, with the possible exception of Dr. Dupre, expressed the opinion that plaintiff’s disability was temporary and that he would recover long before the end of the 300 week period for temporary total disability. The maximum period must therefore be reduced to 300 weeks. LSA-R.S. 23:1221 (1); Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314; Malone’s Louisiana Workmen’s Compensation Law and Practice, Sec. 280.
Although defendant has argued as a final alternative that this case be remanded for further medical testimony as to the duration of plaintiff’s disability, as was not done by this court in the case of Istre v. Molbert Brothers Poultry & Egg Co., La.App., 125 So.2d 436, it is our opinion that the employer is adequately protected in the instant case by the provisions of LSA-R.S. 23:1331 which allow it to re-open the case for trial after six months following the date of final judgment.
For the reasons assigned, the judgment appealed from is amended by reducing the maximum period of recovery from 400 weeks to 300 weeks and as thus amended is affirmed. All costs of this appeal are assessed against the defendant.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.