YARRUT, Judge.
This is a suit for workmen’s compensa^ tion of $35.00 per week, not to exceed 395 weeks; $2,500.00 medical expenses; and statutory penalties and attorney’s fees, as damages for the arbitrary and capricious refusal of Defendant to make the payments due Plaintiff whose work was common labor.
The District Court rendered judgment that Plaintiff was totally, but only temporarily, disabled to do work of a reasonable character, and granted compensation of $35.00 per week, not to exceed 300 weeks, conditioned upon Plaintiff submitting to a surgical operation on his injured right thumb within 60 days from the finality of the judgment, failure to submit to which would terminate the compensation. The court did not allow statutory damages or attorney’s fees, but did allow medical expenses not to exceed $2,500.00.
When Plaintiff refused to submit to the operation, within the 60-day period, Defendant terminated compensation payments, from which termination and judgment of the District Court Plaintiff has taken this devolutive appeal.
There is no question about Plaintiff’s employment and wages, or that he was injured when a bale of material that his employer was using fell from a hand truck and struck him on the right thumb, causing a “flexion deformity of the proximal joint of the right thumb,” preventing the extension of the thumb joint to the same degree as the left thumb, described by Dr. Daniel C. Riordan as:
“This thumb is in 30 degrees of flexion at the proximal joint and can flex to 45 degrees whereas the left thumb at the same joint has the range of motion from 10 degrees to 40 degrees.”
*367 The primary issue of this case is whether Plaintiff should be required to submit to an operation, as advised by Dr. Riordan, to immobilize the affected joint and restore complete usefulness to the injured thumb. An additional issue raised by Plaintiff is whether he is entitled to penalties and attorney’s fees for Defendant’s alleged arbitrary and capricious refusal to pay additional benefits.
This case involves primarily a medical question. The Plaintiff was seen by three physicians. The first, Dr. Lawrence Hill, estimated Plaintiff would be able to return to work within four to six weeks of the accident. Following Dr. Hill’s treatment, which occurred within a few weeks of the accident, Plaintiff was seen, at the request of his attorney, by Dr. Irvin Cahen, an orthopedist, on October 12, 1965. Plaintiff’s attorney did not call Dr. Cahen to testify but, instead, introduced his report of November 12, 1965 by stipulation. Plaintiff's case is based principally on the testimony of Dr. Riordan who had examined him, at the request of counsel for the Defendant, on February 1, 1966, about six weeks prior to the trial. Though Plaintiff called Dr. Rior-dan as his own witness, he now seeks to avoid the effect of Dr. Riordan’s testimony.
Dr. Riordan’s report of February 3, 1966 was admitted in evidence by stipulation. Dr. Riordan then testified that, in his opinion, the nature of the flexion deformity in Plaintiff’s right thumb would cause pain if he undertook the normal work of a laborer. He then testified as to the nature and effect of the surgery if performed on Plaintiff’s right thumb, viz:
“Q. Now, Doctor, you have suggested an operative procedure. Would this operation procedure cause him to be confined in a hospital?
“A. For about four or five days.
“Q. Would you use an anesthetic, general anesthetic?
“A. No, not a general anesthetic.
“Q. Would he have any disability in that right hand?
“A. Yes, because he would have no motion at that proximate (proximal joint).
“Q. Now, Doctor, in an operation, of course, I imagine there are chances that this man may have some difficulty with the operation?

“A. Well, that is a risk, but it’s a relatively minor one on a clean case like this where you’re not doing this after an open injury, such as after someone had a cut or something, so this is relatively minor, theoretically.

“Q. Well, I mention infection because that’s first thing that came to my mind, but, for example, a man of his age, fifty-six years of age, that might not get a bone union, that may require additional operative procedures in order to get bone union ?
jfi if; ifc ‡ ‡
“Q. But this is something that could happen ?
“A. It’s a chance. No one could guarantee hundred per cent bone fusion, but I would say it would be highly unusual that he didn’t get a fusion.
The Court: “A moment ago you said even .though after the operation he’d have a normal hand in almost all respects, but there would be some residual disability?
“A. Yes, sir; yes.
The Court: “To what extent?
“A. We normally rate the loss of motion of the proximal joint of the thumb at thirty-five per cent loss of the function, assuming that the whole thumb could be hundred per cent, approxi *368 mately a third of the loss of function of the thumb with the loss of motion at this proximal joint.
Actually, in my opinion, I think my personal opinion is possibly, a little high, but it’s about standard for this thing with people who rate these all over the country. I would say that .the distal joint is more important for the type of work that he does than this joint.
The Court: “But you feel that he would he able to resume his former employment and he able to perform all the tasks involved in that job following this operation?
“A. Definitely, yes, sir.
The Court: “You feel fairly certain that that would be the result ?
“A. Yes, sir.
Under cross-examination:
“Q. Now, in your opinion, if Mr. Pharr undergoes this operation will he be able to return to work as a common laborer?
“A. Yes.
“Q. Will he be free of his pain?

“A. If he gets a solid fusion, yes.

“Q. All right. Now, is the operation reasonably sure of success?

“A. Yes.

“Q. How many of these operations have you performed?

“A. I -wouldn’t know; many hundreds.

“Q. Have you ever had one not successful?

“A. Yes, in rheumatoid arthritis.

“Q. But in normal joints like Mr. Pharr?

“A. No sir.

“Q. Have you ever had an unsuccessful fusion?

“A. No.

“Q. Is the operation dangerous or attendant with unusual risks?

“A. No.

In Borders v. Lumbermens Mutual Casualty Co., 90 So.2d 409, the Court of Appeal for the First Circuit summarized the jurisprudence, viz:
“1. Can it be reasonably assumed that the operation will relieve the situation and permit the claimant to resume the type of work he was performing at the time of the accident?
“2. Will the operation submit the claimant to a minimum of danger and be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain?
“3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence?”
The present case meets each of the above requirements, according to the testimony of Dr. Riordan.
In 1960, this Court in Skidmore v. Drumon Fine Foods, Inc., La.App., 119 So.2d 523, had occasion to consider whether a compensation claimant should be required to submit to the surgical removal of a neu-roma from the stump of his amputated left ring finger. In holding that such an operation would be required the Court said:
“We are convinced from all of the testimony that plaintiff’s condition may be completely cured by a relatively simple operation. The operation is in no sense dangerous or attendant by unusual risks and it is reasonably sure of success; *369 therefore, plaintiff is obligated to submit to this surgery without cost to him by an expert of his choice within sixty days from the date on which this judgment becomes final. We believe that it is only fitting and proper that plaintiff undergo this minor surgery so as to correct and relieve his existing disability in order to restore himself to a state of usefulness, which, of course, will inure to the benefits of himself, his family and society.” 119 So.2d at 525.
In Fredieu v. Mansfield Hardwood Lumber Co., La.App., 53 So.2d 170, the Second Circuit required a compensation claimant to submit to a knee operation for the removal of the medial meniscus, holding that:
“We are convinced that plaintiff’s ability to resume work can and will be restored from operations by a competent surgeon, and that such an operation will be attended by a minimum, if any, danger of ill effects. He owes it to himself, at least, to submit to such an operation rather than go through life, possibly a cripple.” 53 So.2d at 173.
In Duplechien v. States Exploration Company, La.App., 94 So.2d 460, the Court required the injured employee to submit to an operation, under general anesthetic, for the resection of the distal ulna of the right arm, i. e., cutting off of the inner bone of the right forearm.
As was stated by Judge Westerfield in Reeves v. Dietz, 1 La.App. 501:
“The law places the burden upon industry to repair as near as may be the damage it does to man as a member of society, a cog in the economic machine. It contemplates that the injured employee is the normal individual, desiring nothing so much as restoration to normal strength and usefulness, the God given right to work and that he will do nothing to create, continue or increase his disability by wilful or unreasonable conduct and thereby increase the burden upon society by reason of an unnecessarily prolonged disability due not to injuries received in the service of industry but to his laggard sense of his obligation to society.” 1 La.App. at 503.
Plaintiff is really asking this Court to hold that an injured employee is entitled to compensation during disability, even though he refuses to permit harmless surgery tendered him by his employer which would completely relieve his disability. This same contention was answered by the Court in Martin v. Wyatt Lumber Co., 4 La.App. 157, as follows:
“To so hold would be equivalent to saying that an injured employee has the right to willfully, arbitrarily and without reason or excuse, prolong his disability, destroy his usefulness to the state and society, deprive his dependents of support and make himself a charge upon the community.” 4 La.App. at 159.
Regarding Plaintiff’s demand for penalties and attorney’s fees, we repeat that following his injury on April 12, 1965, Plaintiff was treated by Dr. Hill on the date of the accident and for a time following the accident. Dr. Hill submitted a report to Defendant which was received by it on May 17, 1965. Earlier on May 11, 1965, Plaintiff’s attorney wrote to Plaintiff’s employer, demanding workmen’s compensation for his client. This letter was answered on May 18, 1965 by Defendant, and a check was sent to Plaintiff for five weeks compensation and three additional weekly payments. Defendant’s manager testified he terminated compensation on the basis of the report of Dr. Hill to the effect Plaintiff would be able to resume regular work in approximately four to six weeks following the injury.
Except for the letter of May 11, 1965 by Plaintiff’s counsel, no other demand was made on Defendant until the filing of this suit. Penalties and attorney’s fees (LSA-R.S. 22:658) are contingent upon the insurer’s “[fjailure to make payment within *370 sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable' cause.” Mere failure to make payment does not subject an insurer to penalties and attorney’s fees even though it may be later found that the payments were due. The failure to pay must be arbitrary, capricious, or without probable cause, and there must have been a demand for the payment.
In Bush v. Insurance Company of North America, La.App., 185 So.2d 328, plaintiff asked for penalties and attorney’s fees. The Court denied these because defendant had paid the claim within 60 days of the date of plaintiff’s demand. See Saltalamacchia v. Strachan Shipping Company, 246 La. 91, 163 So.2d 548; Johnson v. Barworth, Inc., La.App., 173 So.2d 349; Guillory v. Southern Farm Bureau Casualty Ins. Co., 237 La. 374, 111 So.2d 314; Jones v. Employers Mutual Liability Ins. Co. of Wis., La.App., 114 So.2d 602. In refusing to grant penalties and attorney’s fees the Court in Bertrand v. Patterson Truck Line, La.App., 138 So.2d 663, said:
“Counsel argue that since the doctor had not released plaintiff from treatment defendants were not justified in assuming that he was no longer disabled. We cannot agree with counsel in that argument. An employer, or his insurer, may discontinue making compensation payments to an injured employee when the employee recovers from his injury and is no longer disabled, regardless of whether or not he has been released from treatment by his physician. In determining whether such payments should or may be discontinued, an employer or his insurer ordinarily may rely on the opinions of medical experts as to whether the employee has recovered from his injury and disability, and he will not be required to pay penalties and attorneys fees under LSA-R.S. 22:658 or LSA-R.S. 23:1291.2 unless the discontinuance of compensation payments is found to be arbitrary, capricious, or without probable cause.
“In this case, we think the report of the treating physician, rendered on May 30, 1961, indicated that plaintiff could return to his employment at that time, and that on the basis of that report defendants were justified in discontinuing the further payment of compensation benefits to him.” 138 So.2d at 667.
See also Vidrine v. American Employers Insurance Company, La.App., 129 So.2d 288, and Chase v. Warren Petroleum Corporation, La.App., 168 So.2d 861.
The next report Defendant received from a physician of its choosing was that of Dr. Riordan dated February 3, 1966. By this time, suit had been filed and the trial date was five weeks away. The operation recommended by Dr. Riordan was again tendered to Plaintiff and again refused.
Accordingly, Defendant was not arbitrary and capricious in refusing to pay even after receiving the report of Dr. Riordan for the reason that the Plaintiff himself arbitrarily and unreasonably refused to submit to the operation recommended by Dr. Riordan and tendered to him by Defendant.
As the District Judge’s decree held that Plaintiff should submit to corrective surgery within 60 days, which Plaintiff refused, Defendant cannot be held to have acted arbitrarily and capriciously in refusing to pay more than eight weeks of compensation.
However, while the judgment of the District Court is affirmed; the case is remanded to the District Court to permit Plaintiff, within 30 days from the finality of this judgment, to submit to the appropriate surgery, and for the determination by the District Court whether the surgery was effective; Plaintiff to pay all costs of this appeal; and all other costs to await the final outcome of this litigation.
Case remanded for further proceedings in accordance with the above decision.