SAVOY, Judge.
Plaintiff filed suit for total and permanent workmen’s compensation benefits. This appeal is brought by Travelers Insurance Company and Prince Marine Drilling and Exploration Company from an adverse judgment of the lower court decreeing plaintiff, Lee J. Thibodeaux, to be temporarily disabled and entitled to $35.00 per *531 week for 300 weeks plus medical expenses not to exceed $2,500.00, subject to amounts previously paid.
Defendants concede that plaintiff, was injured as a result of an accident which occurred on November 26, 1966, and that at the time of the injury plaintiff’s wages were such that if plaintiff is entitled to workmen’s compensation, he is entitled to benefits of $35.00 per week.
The primary question presented for review is the period of disability of plaintiff. The facts of the accident and injury are not disputed by defendants.
Plaintiff began working for Prince Marine in early November, 1966, and was injured on November 26, 1966. He was working as a roughneck on the shift from 10:00 P.M. to 6:00 A.M. His specific job was to attach the winch cables to the drill pipes in the pipe racks so the drill pipes could be carried to the V-door. Difficulty was experienced in this operation when some of the pipes became caught under the elevated floor platform. Each time this occurred, the winch operator would lower the pipe and lay it flat on the ground, under the floor, called the basement. Plaintiff would walk down to the basement, unfasten the cable from the pipe, manually pull the pipe free from the overhang of the elevated floor, re-attach the cable to the drill stem and signal the operator to haul away. The operator would then winch the pipe and place it in the V-door. The pipes handled in this fashion by plaintiff were very heavy, weighing from 300 to 500 pounds each. When this was accomplished plaintiff would return to the pipe rack and continue his duties. Throughout the evening, plaintiff was called upon several times to pull the drill pipes out of the basement and place them in position where the pipes could be handled by the winch. On one such occasion as plaintiff was pulling a section of drill pipe, he felt a pull and a pain in his low back. When this happened plaintiff rested a short time and then resumed his work to the end of his work day. He drove home on the morning of the 26th, a Saturday, with the remainder of the crew. When he arrived home he bathed and placed hot compresses upon his sore back and went to bed. The next day plaintiff worked mostly on the floor, performing exceptionally heavy labor in that he swung a sledge hammer. His back bothered him all that night. The following morning plaintiff drove home with the remainder of the drilling crew. He again went to bed with hot compresses. The following day he returned to work and made the complete day, but by the time he returned home on the morning of November 28, 1966, his pain was so severe that he reported to his physician, Dr. Louis E. Shirley, Jr. Plaintiff reported the injury to his driller and complained of pain to other members of the crew on several occasions during this period.
Plaintiff performed heavy manual labor all of his adult working life. Prior to the accident he had been steadily employed for 11 years, his work being divided equally between roughnecking and as a steeplejack. During these 11 years plaintiff missed only two or three weeks work as a result of injury. This occurred in June of 1966 when he injured his low back roughnecking for Yates Drilling Company. Subsequent to the injury with Yates, plaintiff returned to heavy manual labor as a steeplejack, working for four months without pain, discomfort or complaints.
Since November 28, 1966, plaintiff has not engaged in any work for wages. Upon the advice of his treating physician, he did perform several mild activities such as scraping a boat and the side of his house to prepare them for painting. These mild activities caused plaintiff such pain that he was forced to discontinue them. Plaintiff also testified that it took him three days to mow his 40' x 100' yard, even though he was using a power mower.
Defendant Travelers paid plaintiff compensation at the rate of $35.00 per week for 15 weeks, from November 28, 1966, through March 23, 1967.
*532 Defendant Travelers contends first that plaintiff was fully recovered as of March 14, 1967, when the compensation benefits were terminated; and, alternatively, that if plaintiff has had any disability since March 14th, it has been due to the other activities plaintiff has .'undertaken since March 14th.
The physician who first attended plaintiff subsequent to the injury was Dr. Louis E. Shirley, Jr. He was examined by Dr. Heinz K. Faludi, a neurological surgeon; Dr. James Gilly, orthopedic surgeon; Dr. Jerome W. Ambrister, orthopedic surgeon; and Dr. Norman P. Morin, orthopedic surgeon.
The medical testimony is conflicting as to the extent of disability. However, the trial court noted that none of the medical experts testified that plaintiff was a malingerer. All of the medical experts testified by deposition, except Dr. Gilly whose medical report was stipulated to.
On Dr. Shirley’s first examination of plaintiff, two days after the accident, he noted muscle spasms in the low back muscles. Based upon his findings and plaintiff’s stated history, he diagnosed the condition as an acute strain of the low back muscles. Dr. Shirley prescribed a course of treatment which included rest, diathermy, ultra-sound for muscle spasm, and medication in the form of muscle relaxing drugs and analgesics for pain. In December of 1966, Dr. Shirley fitted plaintiff with a back brace which provided some relief. Plaintiff received treatments in Dr. Shirley’s office once or twice a day for the first two weeks, and later only twice a week. In March of 1967, when plaintiff’s back symptoms were noted to be aggravated, Dr. Shirley resumed treatments on a daily basis.
During the course of treatment, Dr. Shirley saw plaintiff once a week at first then every two or three weeks. This continued until March 20, 1967, at which time Dr. Shirley discharged plaintiff. In his report to Travelers Dr. Shirley stated that “if he returns to hard labor, a return of his trouble can be expected.” Dr. Shirley stated in his deposition that he felt that if plaintiff returned to hard work at the time he was discharged, he might get a recurrence of his symptoms.
In July of 1967, plaintiff returned to Dr. Shirley, and on re-examination, Dr. Shirley found the same symptoms originally noted in plaintiff’s low back and resumed ultra-sonic treatment for the spasms, diathermy and medication for pain. Treatments were administered on a daily basis then gradually decreased to every third or fourth day. These treatments continued until the last part of October, 1967, at which time plaintiff’s back became asymptomatic again. Dr. Shirley stated in his deposition that he was of the opinion that if plaintiff stays off hard work he would be able to stay free of symptoms.
On the date of the last examination, Dr. Shirley was of the opinion that plaintiff was unable to perform the work required of a roughneck due to his back disability. He was also of the opinion that this disability was related to the strain he experienced on the job when he was pulling the 30-foot section of drill pipe out of the basement on November 26, 1966. Dr. Shirley was of the further opinion that plaintiff would not be able to return to hard manual labor as required of a roughneck for a period of at least one year and probably two years.
Dr. Ambrister, who testified on behalf of defendant Travelers stated he examined plaintiff on January 6, January 30, and March 15, 1967. On the first examination he was of the opinion that plaintiff was recovering from a straining-type injury to the lumbosacral region of the back, and believed that plaintiff would be able to return to his previous work in two or three weeks. On January 30th Dr. Ambrister felt plaintiff was still disabled but believed it may have been due to the fact that plaintiff did not carry out the recommended postural exercises. On March *533 15th Dr. Ambrister concluded that plaintiff could return to his former duties. Plaintiff’s complaints to Dr. Ambrister were essentially the same during all three examinations.
At the request of plaintiff’s attorney, Dr. Gilly examined plaintiff on one occasion and found no evidence of disability in the lumbar spine although he did believe that plaintiff was having difficulty with his back. He concluded that the pain in plaintiff’s back was caused by the shortening of the heel cord and hamstring muscles and recommended corrective shoes.
Dr. Faludi examined plaintiff on June 27, 1967, and also on November 24, 1967. He found plaintiff still had residuals from his low back strain, and on his last examination, he was of the opinion that plaintiff was unable to perform the heavy work required of a roughneck but believed that a gradual build up from light work into heavier duties over a period of two or three weeks would enable plaintiff to return to work as a roughneck. He felt that plaintiff’s disability was connected to the injury of November 26, 1966. Dr. Faludi stated that except for muscle spasm observed when the injured tissue is in a state of activation, the physician has to rely almost entirely upon what the patient tells him in order to determine and locate the area injured.
Dr. Morin examined plaintiff on October 23, 1967, at the request of defendant Travelers. He stated he found no objective evidence of orthopedic disability; that he could not account for plaintiff’s complaints on the basis of orthopedic disability; and, consequently, he concluded that plaintiff had completely recovered from his injury and could return to work as a roughneck.
It is noted here, however, that during the last week in October of 1967, Dr. Shirley likewise found that all of plaintiff’s objective symptoms such as muscle spasm had disappeared and were in a state of remission and could be expected to remain asymptomatic as long as plaintiff did not engage in heavy manual labor. Further, plaintiff’s injury involved soft tissue only.
The differing opinions held by the specialists can, in some measure, be related to their appraisal of plaintiff’s credibility. Up to October 23, 1967, when Dr. Morin first examined plaintiff, all of the medical experts concurred to the effect that plaintiff had sustained a disabling low back straining-type injury. Only Dr. Ambrister was of the opinion that plaintiff could return to his former employment as of the date compensation was terminated, but it was only when the condition persisted longer than Dr. Ambrister would normally have expected it to continue that he changed his medical opinion. At the time of his first two examinations, Dr. Ambris-ter believed plaintiff was suffering from a low back sprain or strain, and could not perform the duties of a roughneck at that time.
Plaintiff and his wife testified in great detail respecting plaintiff’s disability beginning with the date of injury and continuing through the date of the trial. This testimony cannot be disregarded. If the medical testimony is so evenly balanced as to be totally disregarded, there is precedent for allowing plaintiff compensation on his statement of disability alone. Johnson v. Hillyer, Deutsch, Edwards, Inc. (La.App., 1 Cir., 1939), 185 So. 652.
There is also medical disagreement regarding the projection of the expected period of disability beyond the trial date, although all evidence indicates the disability will not be permanent. Since the evidence is not certain as to when plaintiff will be able to resume the work of a roughneck, we agree with the trial court that judgment should be for total and temporary disability during a period not to exceed 300 weeks. Gay v. Stone & Webster Engineering Corporation (La.App., 1 Cir., 1939), 191 So. 745.
We find no support for defendants’ alternative defense that plaintiff’s disabili *534 ty should be related to other activities, such as mowing his yard, scraping a boat or scraping a house. It must be noted that these tasks were in line with all the doctors’ recommendations that plaintiff attempt to return to light work.
For the reasons assigned the judgment of the district court is affirmed at appellants’ costs.
Affirmed.