307 So.2d 663 (1975)
John C. CHAVIS, Plaintiff-Appellee,
v.
MARYLAND CASUALTY COMPANY, Defendant-Appellant.
No. 4807.
Court of Appeal of Louisiana, Third Circuit.
January 23, 1975.
Rehearing Denied February 24, 1975.
Writ Refused April 24, 1975.
*664 Brame, Bergstedt & Brame by Joe A. Brame, Lake Charles, for defendant-appellant.
Cox, Cox & Knapp by James J. Cox, Charles, for plaintiff-appellee.
Before FRUGE, DOMENGEAUX and WATSON, JJ.
WATSON, Judge.
In this workmen's compensation suit we are called on to review principally the questions of total or temporary disability and the necessity for demand for resumption of compensation benefits.
On September 26, 1973, John C. Chavis, plaintiff, was employed as a heavy truck driver by Phillips Kash & Karry Building Material Center, Inc., a Lake Charles based company engaged in lumber sales. Defendant, Maryland Casualty Company, is the employer's workmen's compensation insurer. Phillips also had other locations in the state, including DeRidder, where the plaintiff was working on the day of the accident. Plaintiff was in the process of binding down a load of timber (with chain binders) on the bed of a truck when the binders gave way and he slipped backward off the truck into a shallow ditch, his full weight apparently falling on his left leg and foot. As a result of this fall plaintiff sustained the injuries which he claims resulted in his disability.
After the accident plaintiff was transported to the emergency room of the DeRidder Medical Clinic, where he was examined and x-rayed by Dr. E. R. Brown, a general practitioner. The doctor found no indication of fractures in the x-rays and concluded plaintiff had sustained a badly sprained ankle.
Plaintiff did not return to his former job duties after the accident, but went to his home in Lake Charles where he remained for several weeks, soaking his foot and keeping it elevated. His employer then suggested that he see Dr. Joseph A. George, a Lake Charles general practitioner.
Plaintiff was first examined by Dr. George on October 1, 1973, and saw him on a regular basis thereafter until January 23, 1974. After several x-rays, Dr. George discovered that Chavis had a fracture of the left heel bone. His foot was then placed in a cast, which subsequently was removed and replaced. As of plaintiff's last visit Dr. George testified the fracture had healed and plaintiff should have no disability as a result of the fracture. However, the doctor was of the opinion that due to the continued swelling and pain the plaintiff would be unable to return to his usual and ordinary occupation of driving a heavy truck on this latter date. He further indicated that he wanted Chavis to start exercising the foot and that, inasmuch as the plaintiff's difficulty continued, an orthopedic opinion should be obtained.
During plaintiff's treatment by Doctor George, the physician sent several medical reports to the defendant insurer, including one dated January 7, 1974, reflecting that the patient would have no permanent injury as a result of his accident.
Defendant-insurer had been previously paying workmen's compensation benefits at the rate of $65.00 per week from the date of the injury until receipt of the January 7 *665 letter. Benefits were thereafter terminated.
Plaintiff filed this suit on January 25, 1974.
Subsequently plaintiff's attorney sent his client to be examined by Dr. George P. Schneider, a Lake Charles orthopedic specialist, on March 14, 1974. The doctor's clinical findings were essentially the following: Plaintiff walked with his foot twisted under him; atrophy of left calf and thigh; hard, firm swelling of left lower leg, ankle, and foot; restriction of motion and functions at left ankle and foot; secondary stiffness of all joints of left foot and toes; and tenderness on outer side of left heel.
X-rays which were taken also showed extensive decalcification of the lower end of the leg bones and bony components of the left foot. They additionally revealed an old healed fracture of the heel bone, the latter, however, having healed in a slightly "rolled in" position with some deviation of angle.
The doctor was of the opinion plaintiff had an obvious persisting severe disability of the lower left leg, ankle, and foot, as well as considerable disability of the left lower extremity as a whole due to secondary atrophy of disuse. He further thought that plaintiff's period of disability was indefinite, that possibly surgery would be necessary if plaintiff did not respond satisfactorily to needed physical therapy, and finally that plaintiff was in no way capable of assuming any type of gainful employment which involved weight bearing of any type.
Compensation payments were reinstated by the defendant insurer on March 20th and benefits were brought up to date from the time of discontinuance.
Plaintiff was also examined on behalf of the defendant by Dr. David Drez, Jr., a Lake Charles orthopedic surgeon on May 23, 1974. His findings were essentially the same as Doctor Schneider's. Doctor Drez, however, was of the opinion that plaintiff was experiencing a condition called post traumatic sympathetic reflex dystrophy.[1] The doctor indicated he thought that if plaintiff could overcome this problem with proper treatment he would be able to return to his former job.
The trial judge ruled in favor of plaintiff, holding that he was totally disabled as of the trial date and that permanent disability benefits would be awarded him subject to the statutory right of the defendant to seek a modification of the judgment under LSA R.S. 23:1331, should the disability terminate. The trial judge also awarded the plaintiff penalties and $2,000.00 attorney's fees, holding that defendant's termination of payments was arbitrary, capricious, and without probable cause within the meaning of LSA R.S. 22:658.
Defendant appealed, alleging essentially that plaintiff was not permanently disabled and should have been granted temporary total disability benefits, not to exceed 300 weeks, under LSA R.S. 23:1221. In addition, it is argued that penalties and attorney fees should not have been awarded.
The issues, therefore, are (1) whether plaintiff is entitled to temporary or permanent disability benefits and (2) whether penalties and attorney's fees were properly awarded.
As to the first issue, the trial judge ably pointed out:
"On the date of the trial, the defendant was totally disabled. A course of treatment consisting of physical therapy and medication had been instituted by Dr. George P. Schneider, the treating physician, only several days before the trial. Although the exact procedure instituted by Dr. Schneider was not concurred in completely by Dr. David Drez, Jr., Dr. Drez was in agreement that physical *666 therapy and medication was the proper treatment indicated at the present time. Neither doctor would state that the disability would be permanent, yet neither would state with any reasonable certainty that the injury would not be permanent. They both expressed hope that the physical therapy would be successful. If unsuccessful, then surgery possibly would be in order, but judgment on that decision was reserved until later. Both doctors expressed hope that the therapy would be successful, and if so, they were of the opinion that his disability would be terminated within a period of six months or less. However, both doctors were very guarded in their expressions of opinions as to the duration of disability. Each testified that he could give no opinion as to the expected, as distinguished from hopeful, success of the treatment because of the many variable factors involved. Therefore, they both emphasized repeatedly that they could give no opinion as to duration of disability other than `indefinite'. Neither gave any reasonable assurance that the disability would ever be terminated.
"In other words, if the treatment is successful, they expect the disability to be of a temporary nature, but if not successful, the disability will be permanent because the condition of the foot and ankle will deteriorate rather than improve with the passage of time. Neither would predict the success of treatment, but declared in effect they would maintain a `wait and see' attitude.
"The law as expressed by the Third Circuit in Carroll v. Southern Casualty Insurance Company, 285 So.2d 370 (1973), is:
"Further, where a claimant is totally disabled at the time of trial, and the evidence is uncertain as to when he may recover, compensation should be awarded for the maximum number of weeks prescribed for permanent disability, since the defendant insurer is protected by the provisions of LSA-R.S. 23:1331, permitting revision of the judgment after six months, should the disability terminate.' (See also Aymonde v. State National Life Insurance Company, et al, 138 So.2d 460).
"Accordingly, judgment will be rendered awarding compensation benefits for the duration of the disability not to exceed five hundred weeks."
We fully concur in this finding. See also Montgomery v. Delta Concrete Products Co., Inc., 290 So.2d 769 (La.App. 1 Cir. 1974); Bushnell v. Southern Farm Bureau Casualty Ins. Co., 271 So.2d 267 (La.App. 3 Cir. 1972).
Notwithstanding, defendant alleges that the evidence as a whole should be construed as evidencing temporary total rather than permanent total disability. For authority are cited Guillory v. Southern Farm Bureau Casualty Co., 237 La. 374, 111 So.2d 314 (1959); Thibodeaux v. Travelers Ins. Co., 212 So.2d 530 (La.App. 3 Cir. 1968); and Cloud v. National Surety Corp., 138 So.2d 630 (La.App. 3 Cir. 1962). These cases are clearly distinguishable from the facts of the instant case. In each of the decisions the medical testimony was almost unanimous that the plaintiff's injuries were of a temporary, and not permanent, nature. Here, the medical testimony, viewed as a whole, preponderates to the effect that the extent of plaintiff's total disability in uncertain. The duration depends on whether the plaintiff responds to treatment. Under these facts the plaintiff has carried the burden of proof necessary for an award of permanent disability benefits.
The next issue is that of penalties and attorney fees.
LSA-R.S. 22:658 provides:
§ 658. Payment of claims, policies other than life and health and accident; penalties
*667 All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees. Amended and reenacted Acts 1958, No. 125.
Defendant first contends that it was not "arbitrary and capricious" due to the fact that termination was based on the medical reports submitted by Doctor George on October 13, 1973, and January 7, 1974.
The record, however, reveals that the October 13, 1973, letter indicated only that: (1) the injury would not result in a permanent defect; (2) it was undetermined if further treatment was needed; and (3) that the patient would be able to resume light work from six to eight weeks from the accident.
The form dated January 7, 1974, bearing the title "Final Medical Report", was limited to an indication of: (1) the medical expenses incurred by the plaintiff under the care of Doctor George; and (2) that plaintiff had no permanent injury. The spaces indicating plaintiff was "Pronounced able to return (to work) on date", "Discharged as cured on date", etc. were not filled out.
Under neither report was the defendant-insurer able to assume plaintiff could return to work. No such indication was given by either report. A conclusion that plaintiff was no longer disabled and could return to work was therefore completely unwarranted.
As held by the trial judge:
"It was at least incumbent upon defendant to make further inquiry as to plaintiff's true condition since it had no definite expression from the physician as to termination of disability. This it failed to do and chose, instead, at its risk, to rely upon its own erroneous interpretation of the reports. See Stroud v. Tremont Lumber Company [La.App.], 193 So.2d 86; McClelland v. Liberty Mutual Insurance Company [La.App.], 180 So.2d 19; Scott v. Royal Castle System, Inc., et al [La.App.], 203 So.2d 817; and Hills v. Travelers Insurance Company [La.App.], 250 So.2d 551."
Defendant however argues that even if discontinuance of payments was arbitrary there must be a demand for resumption of payments before penalties and attorney fees are allowed. Further, it is contended that the insurer's obligations were fulfilled since compensation payments were begun and brought up to date within sixty days from suit being filed.
The trial judge considered this argument but factually distinguished the cases cited by the defendant and held that once payments are commenced and arbitrarily discontinued thereafter the insurer subjects itself *668 to statutory penalties without the necessity of a demand for resumption of payments. In this respect he said:
"To interpret the law in accordance with defendant's contention would permit an insurer to arbitrarily discontinue payments repeatedly, force the employee after each discontinuance to make demand and then wait nearly sixty days thereafter each time to bring the payments upto-date, or force the plaintiff to litigate. This clearly is contrary to the intent of the compensation statute."
This reasoning by the able trial judge is persuasive. Additionally, his conclusion is supported by Plaisance v. Collins Industries, Inc., 193 So.2d 816 (La.App. 1 Cir. 1966), writ refused 250 La. 274, 195 So.2d 149 (1967).
Also, the trial court based its opinion on this Court's recent decision in King v. Insurance Company of North America, 288 So.2d 878 (La.App. 3 Cir. 1974). In King, the lack of demand was not urged as a defense to the award of attorney's fees. Nevertheless, we required no assertion of a demand before awarding attorney's fees and penalties.
We have been cited to Muse v. Sentry Ins. Co., 269 So.2d 609 (La.App. 3 Cir. 1972); writ denied, 263 La. 981, 270 So.2d 120 (1972); and Pharr v. Insurance Company of North America, 200 So.2d 365 (La.App. 4 Cir. 1967) for the proposition that demand must be made for resumption of compensation payments, as well as for the initial payment of benefits, before the insurer is subject to being cast for penalties and attorney's fees.
Although the opinions in both Muse and Pharr indicate that there is a necessity for a demand for resumption of compensation, a close analysis of each case reveals that the failure to make demand was not the decisive factor and that the observations by the courts were in the nature of dicta. In Muse, the trial court awarded compensation for loss of taste and smell. This court held that plaintiff, who was prevented from returning to any employment involving stress for an indeterminate period of time due to traumatic neurosis, was totally and permanently disabled. According to the testimony of one psychiatrist based upon a single psychiatric interview. See 269 So.2d 614. The court noted in Muse that compensation had been terminated on the basis of a doctor's report and suit followed without a demand for resumption of payments. There was no finding that the defendant had been arbitrary and capricious in terminating payments; in fact, the opposite is suggested by the statement that payments were stopped on the basis of a doctor's report. (In the instant case, payments were stopped following the receipt of a doctor's report but the report, we hold, as did the trial court, was not a proper basis and did not include information to justify the cessation of weekly benefits).
A similar situation was presented in Pharr in that the statement concerning demand was in the nature of dicta. The precise holding of the case was that the plaintiff would be required to submit to appropriate surgery as a condition to receiving temporary disability benefits and that ". . . Defendant was not arbitrary and capricious in refusing to pay even after receiving the report of Dr. Riordan for the reason that the plaintiff himself arbitrarily and unreasonably refused to submit to the operation recommended by Dr. Riordan and tendered to him by Defendant." 200 So.2d 370. Therefore, the statement by the court in Pharr and quoted in Muse, to the effect that there must have been a demand for the resumption of payments is beside the point.
We find that Muse and Pharr are not persuasive and controlling authorities for the disposition of this case. The trial court was correct in awarding penalties and attorney's fees following an arbitrary and capricious discontinuance of payments even though no demand had been made for *669 resumption. The decision of the trial court is affirmed.
The plaintiff has answered the appeal requesting that the original judgment be amended to increase the amount awarded for attorney's fees by reason of the additional work of counsel necessitated by the appeal. In other cases we have allowed $500 under these circumstances and, accordingly, the judgment is amended to increase the amount of attorney's fees to the sum of $2,500.
Costs are taxed against the defendant.
Amended and affirmed.
DOMENGEAUX, J., concurs in part and dissents in part and assigns written reasons.
DOMENGEAUX, Judge (concurring in part and dissenting in part).
I concur fully in the majority opinion, with one exception, i. e. the holding that no demand for resumption of workmen's compensation benefits is necessary. Although I feel there is justification for this holding, as ably set out by the trial judge and the majority herein, this court has heretofore followed the rule that a demand for resumption must be made. See: Muse v. Sentry Insurance Company, 269 So.2d 609 (La.App. 3rd Cir. 1972), "no error of law", (on which panel this writer was a member) wherein we cited Pharr v. Insurance Company of North America, 200 So.2d 365 (La.App. 4th Cir. 1967). In my opinion our holding in Muse was not dicta.
As a result, I feel constrained to follow our former holding and, for that reason only, would reverse that part of the judgment granting the plaintiff penalties and attorney's fees.
This decision lends to the Supreme Court an opportune occasion to clear up the apparent diverse opinions on this question.
For these reasons I respectfully concur in part and dissent in part from the majority opinion.
NOTES
[1] A syndrome resulting from disuse of an area that has received a trauma of some type.