YARRUT, Judge.
Plaintiffs seek workmen’s compensation for the wife’s total and permanent disability, medical expenses, penalties and attorney’s fees. The District Judge awarded her $35.00 a week for a period not to exceed 400 weeks, based on total and permanent disability, and medical expenses; but denied penalties and attorney’s fees. On appeal Plaintiff urges: (1) that statutory penalties and attorney’s fees be allowed under LSA-R.S. 22:658; and (2) that the expert fee allowed Dr. Blaise Salatich, orthopedist, be increased from $100 to $200.
Plaintiff was injured on May 10, 1965, when she slipped, fell backwards and hit a metal case in which rootbeer was kept. She suffered fractures of the traverse process of the veterbrae L-l, L-2 and L-3 on the right side. She was paid compensation totaling $735.00 from May 12, 1965-, to October 6, 1965, when compensation was discontinued. Defendants contend they properly discontinued payment on the basis of a report given by then treating physician, Dr. Thomas Lee Duncan, orthopedic surgeon, whose report reads as follows:
“The patient was seen again September 3, 1965, at that point 16¡/á weeks post-injury. Patient was continuing to complain of her right lumbar back area hurting. She said she thought she had strained her back lifting the end' Of a lounge couch, aggravating her back. The patient was still complaining of her right thigh hurting too. The patient was much more obese than usual. The patient informed me at this time that she was two months’ pregnant.
“On examination of patient’s low back she hurt to bend to the left with a pulling in the right lumbar area, hurting over this maneuver. The patient was also tender to palpation of the right lumbar region. She performed forward and backward bending of the trunk and bending to the right without difficulty.
“It was my opinion that patient had aggravated her back lifting and that her back injury would now be complicated by the process of going through a normal pregnancy.
“I did not have any x-rays made. I advised patient to continue resting, to avoid straining and return again in a month.
“Patient was seen again October 1, 1965. She was continuing to complain of her right low back and her right thigh. She had continued to gain more weight. Patient thought that the weight gain was the reason why her back was continuing to-bother her. The patient said her gynecologist would send me a report concerning her.
“I expect her back injuries will continue to heal. However, I expect that the additional strain of pregnancy state on the back may well cause her to have complaint of back pain during her pregnancy. I plan to have the patient continue to check with me at monthly intervals. Unless some new acute situation develops in regard to the back, I plan to wait until her pregnancy is over before checking her back by x-ray further.” (Emphasis added.)
Previous reports had indicated that Plaintiff was still undergoing treatment and was slowly recovering. It is signifi *819 cant that a memorandum of a telephone conversation, on October 27, 1965, between Dr. Duncan and Mr. Milton Bermudez, a representative of Defendant insurer, introduced without objection, showed that Mr. Bermudez told the doctor the compensation had been terminated because his interpretation of the doctor’s report was that the disability suffered by Plaintiff was due entirely to her pregnancy. However, the doctor explained to Mr. Bermudez that the patient was still under observation and treatment for her fractures of the spine, and that the situation was merely complicated, not created, by her pregnancy. Dr. Duncan testified that at no time during his treatment, which terminated in February of 1966 when he referred Plaintiff to Dr. John D. Jackson, a neurosurgeon, did he ever discharge the patient or indicate in any way that she was able to resume her former duties.
Dr. Jackson testified that he tried to obtain the Defendant insurer’s permission to perform a myelogram on Plaintiff because, in his opinion, she had a ruptured disc. Permission was never secured from the insurer and no myelogram was ever performed.
Dr. Salatich testified that, at no time during the period of his treatment, which was subsequent to that of Dr. Jackson, was Plaintiff able to return to her former employment.
There is much testimony concerning the fact that Plaintiff lifted one end of a couch in her home, which might have aggravated her condition. However, we do not believe the couch-lifting to be significant because Dr. Duncan testified that he instructed Plaintiff to resume her normal household duties as far as possible. Moreover, both the memorandum of the telephone conversation between the insurance, representative and Dr. Duncan, and Dr. Duncan’s testimony, indicate that the Insurance Company was not relying on this incident to terminate the compensation payments, but was terminating them because it interpreted Dr. Duncan’s report as meaning that Plaintiff’s back condition was due entirely to her pregnancy. We do not believe that this is a fair interpretation of Dr. Duncan’s report. In any case, it was encumbent on the insurer to take reasonable steps to determine if this interpretation was a correct one. McClelland v. Liberty Mutual Insurance Co., La.App. 180 So.2d 19, 21.
Defendant relies heavily on the trial judge’s reasons for judgment in which he stated that he did not put “much stock in her [Plaintiff’s] veracity” and that “this lady is not so badly injured as she makes out to be.” However, the trial judge did conclude from all the evidence that the Plaintiff was in fact “totally and permanently disabled.”
According to LSA-R.S. 22:658, the penalties and attorney’s fees are imposed when failure to make payment is found to be “arbitrary, capricious, or without probable cause.” The determination of whether the action in terminating payments is arbitrary and capricious was being made on the basis of the information and evidence that the insurer had before it on that date. Stroud v. Tremont Lumber Co., La.App., 193 So.2d 86. Considering all the circumstances we find that the insurer did not have sufficient evidence before it at the date of termination, October 6, 1965, to justify the termination of payment.
With regard to attorney’s fees, our jurisprudence fixes fees in varying amounts from $1500 to $3000. McClelland v. Mutual Insurance Co., supra, and the cases cited therein. Under all the circumstances prevalent here, we find that an attorney’s fee of $2,000 is fair and adequate. See Funderburk v. Southwestern Iron Corp., La.App., 180 So.2d 4 and Stroud v. Tremont Lumber Co., supra.
With regard to Dr. Salatich’s fee, which the trial court set at $100, Plaintiff contends that because Dr. Sala- *820 tich testified on portions of two days, the fee should be increased to $200. The amount of expert witness fees lies within the sound discretion of the trial court, and its determination will not be disturbed unless it has clearly abused its discretion. Tison v. Fidelity and Casualty Company of New York, La.App., 181 So.2d 835; Coine v. Smith, La.App., 100 So.2d 902. We find no abuse of discretion in the determination of Dr. Salatich’s fee by the trial court.
For the above reasons the judgment appealed from is amended to cast Defendant insurer for 12;% interest on payments overdue for more than 60 days from the date of the termination of the compensation payments (October 6, 1965) or which shall hereafter become overdue for more than 60 days; and for attorney’s fees in the sum of $2000. As amended, the judgment appealed from is affirmed; all costs of this appeal to be taxed against the Defendant insurer.
Judgment amended and affirmed.