271 So.2d 613 (1972)
Leonard J. ZERINGUE, Plaintiff-Appellee,
v.
FIREMAN'S FUND AMERICAN INSURANCE COMPANY and Bernard Lumber Company, Inc., Defendant-Appellant.
No. 9147.
Court of Appeal of Louisiana, First Circuit.
December 26, 1972.
*614 Claire Loeb, Loeb & Livaudais, New Orleans, for defendant-appellant.
Harvey J. Lewis and Tucker H. Couvillion, Kierr, Gainsburgh & Benjamin, New Orleans, for plaintiff-appellee.
Before SARTAIN, BLANCHE and EVERETT, JJ.
SARTAIN, Judge.
This is a suit for workmen's compensation benefits by Leonard J. Zeringue against his employer, Bernard Lumber Company, and its insurer, Fireman's Fund Insurance Co., brought under the occupational disease provisions of our Workmen's Compensation statute. Defendants appeal from a judgment below awarding plaintiff total disability benefits, medical expenses, penalties and attorney fees. We affirm.
Plaintiff filed his suit under the provisions of LSA-R.S. 23:1031.1 (Occupational Disease) contending that he contracted bullous emphysema as a result of his exposure to a number of toxic substances listed in the statute. Mr. Zeringue was employed by defendant as a supervisor in the Trim Department from September of 1967 until April of 1970. His duties required him to spend several hours per day spray-painting component parts of prefabricated houses and other lumber products manufactured at Bernard's plant in Slidell, Louisiana. The spray-painting was done in a small, ventilated painting booth, enclosed on three sides and equipped with an air exhaust fan and filters which were changed irregularly. There was some evidence that masks were furnished for those people employed by Bernard who spray painted but were never actually used.
In July of 1967, shortly before going to work for Bernard Lumber Company, Mr. Zeringue was examined by Dr. Charles E. Farmer of Slidell for a throat condition. He was treated by Dr. Farmer and Dr. Samuel Zurik of New Orleans for polyps on his vocal cords and the condition completely cleared after treatment with cortisone. At the time of this examination and treatment by Drs. Farmer and Zurick a chest x-ray was taken. Dr. Farmer testified *615 that in his opinion, while the x-ray showed some pleural thickening in the base of Mr. Zeringue's right lung due to some old problem, the x-ray was negative. All of the physicians who testified in the case agreed that this x-ray showed no trace of bullous emphysema at that time.
In early April of 1970, plaintiff began suffering symptoms which he described as shortness of breath, chest pains, coughing, hoarseness and fatigue. He consulted Dr. Farmer, and after a complete examination and new chest x-rays, Dr. Farmer diagnosed Mr. Zeringue's condition as advanced bullous emphysema. Dr. Farmer referred plaintiff to Dr. Ricardo Del Real, a specialist in thoracic surgery, who hospitalized Mr. Zeringue in New Orleans from May 11 until May 17, 1970, at Methodist Hospital. While hospitalized, extensive testing was carried on including numerous x-rays, lung scans, laboratory tests, and a bronchoscopy. Based on the results of these tests and after consultations with other specialists including Drs. Frank P. Incaprera and Louis G. Cucinotta, Dr. Del Real wrote to Dr. Farmer on May 25, 1970, confirming Dr. Farmer's earlier diagnosis of severe bullous emphysema. Plaintiff has continued under the care and treatment of Dr. Farmer from the time of his original diagnosis in late April of 1970 to date.
When plaintiff's condition was diagnosed as bullous emphysema, he was told by Dr. Farmer that he could no longer work in the Trim Department at Bernard because the spray paint would continue to aggravate his condition. Consequently, Mr. Zeringue terminated his employment on April 30, 1970. By letter dated May 25, 1970, Dr. Del Real reported to plaintiff's employer that Zeringue was suffering from severe bullous emphysema and that this condition was definitely related to his occupation of spray-painting. On May 21, 1970, plaintiff wrote to Bernard Lumber Company requesting the necessary forms with which to file a workmen's compensation claim. This request was forwarded to Fireman's Fund, Bernard's insurer, and on June 29, 1970, Fireman's Fund refused Mr. Zeringue's claim for workmen's compensation. According to the testimony of Mr. Raymond Vath, Fireman's Fund's claim supervisor, he decided to refuse Zeringue's claim because he disagreed with the diagnosis of Drs. Farmer and Del Real. At this time there were no other medical reports available showing that plaintiff did not have bullous emphysema.
It was not until some seven months later, on December 9, 1970, that appellants had Mr. Zeringue examined by a New Orleans internist, Dr. Ted Block. Dr. Block testified by post-trial deposition that he examined plaintiff and had several x-rays made of plaintiff's chest by Dr. John L. Heard, a New Orleans radiologist. After studying the x-rays and consulting with Dr. Heard, Dr. Block diagnosed Mr. Zeringue's illness as a chronic pleuritic condition unrelated to any toxic substances contained in the spray paint. Both Dr. Block and Dr. Heard, who also testified by post-trial deposition, stated that they could not completely rule out the possibility that plaintiff might also have bullous emphysema as well as the pleuritic condition. Dr. Block also stated that additional testing would be needed to confirm his diagnosis of a pleuritic condition.
Defendants-appellants contend that the trial court erred in finding that Mr. Zeringue was suffering from bullous emphysema and in finding that the disease was caused by his exposure to the toxic substances contained in the spray paint. Also, appellants contend that the trial court erred in awarding penalties and attorney fees to plaintiff.
The trial judge held that plaintiff did in fact have bullous emphysema. This ruling was based primarily on the testimony of Drs. Farmer and Del Real. Dr. Farmer was plaintiff's personal physician and continues to treat Mr. Zeringue. Dr. Del Real hospitalized plaintiff for six days in May of 1970 and carried on extensive testing *616 and examination of him at that time. Dr. Block and Dr. Heard saw plaintiff on only one occasion and while their diagnosis is contrary to that of Drs. Farmer and Del Real, they both feel that additional testing would be necessary to confirm their diagnosis of a chronic pleuritic condition.
It is not error on the part of the trial judge to attach more weight to the diagnosis made by the treating physicians than to the diagnosis and opinions of physicians who saw the claimant only one time for examination only. Wild v. Continental Casualty Company, 234 So.2d 783 (1st La. App.1970); Oliver v. T & C Contractors, 264 So.2d 225 (3rd La.App.1972), writ denied, 263 La. 16, 266 So.2d 715 (1972); Burgess v. Southern Casualty Insurance Company, 203 So.2d 434 (3rd La.App. 1967).
Therefore, we hold that the trial judge committed no manifest error in accepting the diagnosis and opinion of Dr. Farmer and Dr. Del Real as opposed to the diagnosis of Drs. Block and Heard, and on that basis we agree with the judge a quo that Mr. Zeringue is suffering from bullous emphysema.
Under the provisions of LSA-R.S. 23:1031.1 the occupational diseases for which a person might obtain workmen's compensation are listed. Bullous emphysema is not included in the statutory list. However, in the case of Hicks v. Liberty Mutual Insurance Company, 165 So.2d 51 (2nd La.App.1964) the Court in discussing LSA-R.S. 23:1031.1 stated:
"Our study of the occupational disease section of the Workmen's Compensation Statute and cases cited supra leads us to the conclusion the section in question was never intended to exclude the disease known to the medical profession as emphysema merely because it is not specifically listed in the Workmen's Compensation Statute. Rather, it is our view that the diseases designated therein by name are expressly compensable if they have any causal connection with the claimant's disability; likewise that `poisoning by or other disease resulting from contact with' any of the sixteen chemicals or compounds thereafter listed is compensable."
In Hicks the court held that the emphysema found in the claimant therein was not caused by his inhalation of flour while he worked in a bakery, because the flour did not contain sufficient quantities of any of the listed elements or their derivatives to cause emphysema.
In the case at bar, the paint used by defendant was Glidden-Durkee Prime Paint and a list of the substances contained in this paint was entered in evidence. Dr. William C. Rinehart, a qualified industrial toxicologist, reviewed this paint formula and testified that the paint contained mineral spirits, toluene and ethyl alcohol. These three solvents combined to comprise approximately 38% of the paint formula. Dr. Rinehart further testified that these substances are included in the listed substances under LSA-R.S. 23:1031.1, subd. B, (1), (h), (i), and (j). He also stated that one substance listed as being in the paint, ketoxime, might be ketone, which is listed in subsection (n) of the statute.
In interpreting the provisions of this occupational disease statute it has been held that an employee is entitled to recovery if he contracts a disease as a result of exposure of these substances and that he does not have to prove the causal connection to an absolute certainty but only by a reasonable probability. Bernard v. Louisiana Wild Life and Fisheries Commission, 152 So.2d 114 (3rd La.App.1963), writ refused, 244 La. 664, 153 So.2d 881 (1963).
Plaintiff testified that he spray-painted an average of two to four hours per day during the three years he was employed by Bernard Lumber Company. There is also evidence in the record that the same brand and mixture of paint had been used throughout the period of plaintiff's employment.
*617 Dr. Del Real stated that exposure to toxic paints, with contents such as the spray paint used by claimant, can definitely cause emphysema. He further stated that it was his professional opinion that plaintiff's exposure to the toxic substances in this paint while employed by defendant caused him to contract emphysema. Dr. Farmer also testified that it was his opinion that Zeringue's condition was caused by his exposure to this paint. Even Dr. Block agreed that inhalation of toxic paint substances can cause emphysematous changes in patients. However, Dr. Block was of the opinion that exposure to toxic paint fumes is not a cause of chronic pleuritic disease which is what he felt Zeringue is suffering from instead of emphysema.
As further evidence that the exposure to the paint in this man's occupation caused the disease is the fact that all of the physician's agreed that according to the x-ray taken in 1967 by Dr. Farmer before Zeringue went to work for Bernard, there was no evidence of emphysema. Yet, three years later Drs. Farmer and Del Real found severe bullous emphysema in plaintiff's lungs.
Accordingly, we find that the preponderance of the evidence supports the holding of the trial court that plaintiff contracted bullous emphysema in the course of his employment and as a result of exposure to the toxic substances found in the spray paint.
Defendant's refusal to pay benefits within sixty days after demand was held to be arbitrary, capricious, and without probable cause by the court below, and plaintiff was granted penalties and attorney fees. LSA-R.S. 22:658. Defendants assert that this holding by the trial judge is in error.
Defendants argue that the first sentence of the May 25, 1970, letter from Dr. Del Real to Bernard Lumber Company describing plaintiff's condition and its cause was not sufficient to put the insurer on notice of the nature of plaintiff's claim. Dr. Del Real stated in this first sentence that: "Mr. Zeringue was admitted to Methodist Hospital on May 11, 1970 of progressive pulmonary disease of unknown origin." It is on the wording of this initial sentence that defendants assert they were justified in doubting liability. However, Dr. Del Real went on to state in the second paragraph of this letter: "It is the impression that Mr. Zeringue has some chronic pulmonary disease process going on which is progressively getting worse and is definitely related to his occupation of spray painting."
Mr. Vath testified that he decided to deny plaintiff's claim because he did not agree with the diagnosis of Dr. Del Real. He also testified that this was the only medical evidence before him at the time of the denial of plaintiff's claim. However, it is significant to note that defendants made no attempt to obtain other medical information and opinions on plaintiff's condition until some seven months after the denial of this claim.
In the case of Delafosse v. Industrial Painters, Inc., 199 So.2d 559 (3rd La.App. 1967) the insurer entered a general denial to the plaintiff's claim for workmen's compensation, although the medical testimony then available showed no serious reason to dispute the claim. In granting penalties and attorney's fees the court stated:
"A mere suspicion does not justify an insurer to withhold compensation of benefits for undoubted disability. Williams v. Travelers Insurance Co., La.App. 3 Cir., 157 So.2d 356. Likewise, the elicitation of adverse medical information after an arbitrary denial has precipitated the suit for compensation does not exculpate an insurer from such penalties." (citation omitted)
In Barham v. Mathieu, 198 So.2d 145 (1st La.App.1967) penalties were awarded where no effort had been made by the defendant insurer to secure a medical examination of the plaintiff to corroborate or refute *618 the reports and findings of plaintiff's doctors.
In Tillman v. Royal Castle System, Inc., 203 So.2d 817 (4th La.App.1967) the court held that when the insurer bases its decision to discontinue workmen's compensation benefits on its own interpretation of a medical report, it is incumbent upon the insurer to take reasonable steps to ascertain if its interpretation is a correct one.
In the instant case, the insurer denied the plaintiff's claim on June 29, 1970, on the grounds that they disagreed with the opinion of Dr. Del Real, but then did nothing to ascertain if their interpretation of plaintiff's condition was correct until December of 1970. The trial court found this conduct on the part of the insurer to be clearly arbitrary, capricious, and without probable cause and therefore imposed penalties and attorney's fees. With this conclusion we also agree.
Accordingly, for the above reasons the judgment of the trial court is affirmed at appellants' costs.
Affirmed.