315 So.2d 849 (1975)
Artoun BAGHRAMAIN, Plaintiff-Appellant-Appellee,
v.
MFA MUTUAL INSURANCE COMPANY, Defendant-Appellee-Appellant.
No. 5018.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1975.
Rehearings Denied July 25, 1975.
Writs Refused October 13, 1975.
*850 Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellant-appellee.
Watson, Murchison, Crews & Arthur by William P. Crews, Jr., Natchitoches, for defendant-appellee-appellant.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Plaintiff Artoun Baghramain sued his insurer, defendant MFA Mutual Insurance Company, to recover the amount of his fire loss together with penalties and his attorney's fee. Plaintiff appeals that portion of the judgment rejecting his claim for penalties and his attorney's fee. Defendant answered the appeal seeking a reversal of the judgment awarding the amount of the loss. Defendant urges that it proved the defense of arson, and alternatively seeks to delete or alternatively reduce the award for expert fees which were taxed as costs. We affirm that portion of the judgment finding coverage and setting and taxing expert fees as costs, but reverse to award penalties and plaintiff's attorney's fee.
Plaintiff owned and operated a convenience grocery store located in Natchitoches. The business was housed in a one story (concrete block with cement roof) building constructed by subcontractors for plaintiff some six months before the fire. Plaintiff's fire insurance policy with MFA provided $65,000 coverage ($30,000 on the building and $35,000 on the contents and merchandise), and contained a loss payable clause to the Bank which financed plaintiff's investment.
On March 22, 1974, the store was severely damaged by fire. The fire originated in a small storeroom which was partitioned within the building by a plywood *851 wall on 2 by 4 studs. At trial it was stipulated that the smoke and fire damage to the merchandise, contents, and building totaled $45,363.09.
Plaintiff's counsel sent a formal proof of loss for approximately this amount to MFA on May 24, 1974. On June 25, 1974 MFA denied the entire claim stating that they had been advised by the State Fire Marshall's investigator, Jack Hilton, that they could not accept the proof of loss until the Fire Marshall closed the file on the investigation. They stated that based on this advice, plaintiff's claim was rejected until the file was closed.
On July 5, plaintiff filed suit to recover the loss together with the statutory penalties and his attorney's fee provided for in LSA-R.S. 22:658. MFA's answer denied the claim and alleged the defense that plaintiff committed arson.
A week before trial, MFA paid $32,558.54 under its loss payable clause to Peoples Bank & Trust Company, the holder of 1) the mortgage on the building, and 2) a chattel mortgage on the building contents. In return for this payment, the Bank was required to assign the mortgage notes to MFA.
The trial court rejected the defense of arson and awarded plaintiff $45,363.09 subject to credit for the $32,558.54 paid the bank, conditioned on MFA's returning to plaintiff as "paid" the various mortgage and chattel mortgage notes the Bank had assigned to MFA. Plaintiff's claim for penalties and his attorney's fee was rejected.

Arson Defense
To sustain the defense of arson, the insurer has the burden of proving by a preponderance of evidence that 1) the fire was of incendiary origin, and 2) plaintiff was responsible for it. Proof may be, and invariably is, by circumstantial evidence. When proof is circumstantial, the evidence must be so convincing that it will sustain no other reasonable hypothesis but that plaintiff was responsible for the fire. Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68 (1952).
There were no eye witnesses to the fire. Plaintiff had gone to Houston to be interviewed for other employment and was in Houston on the night of the fire. The possibility existed that he could have driven back, set the fire, and returned to Houston. Plaintiff was heavily in debt and had attempted to sell the business. He had increased his fire insurance coverage by $20,000 just three days before the fire. At trial it was established that the additional insurance was purchased to protect a new creditor who had extended a $20,000 line of credit. There is no evidence to suggest that plaintiff was over insured. Less than a year before this fire, plaintiff's home had been destroyed by fire. It was not established that arson was involved in that fire. Plaintiff's loss exceeded the insurance coverage.
MFA introduced testimony of Jack Hilton, an arson inspector for the State Fire Marshal, and D. F. Darnell, a fire inspector for the same office, in an attempt to show arson. Both inspectors visited the building the morning after the midnight fire, and their findings were identical. Both concluded the fire had been deliberately set. They determined that someone knocked a hole in the bottom of a wood panelled wall, stuffed paper napkins in the hole and then lit the napkins. This version was incapable of proof because fire had destroyed the bottom of the wood panel, and there was no way to conclude that a hole had been knocked in the lower portion of the wall. Their second projected origin of the fire was along a nearby wall. They concluded that someone had interwoven paper napkins through empty bottles in a six-pack cardboard carton, and had lit those napkins. This seemed unreasonable because the cardboard carton had not been scorched.
*852 The temperature had approached freezing on the night of the fire. Neither inspector checked the central gas fired heating system located on the floor within five feet of the points where they concluded the fire originated. The outside panels of the furnace showed severe scorching from intense heat inside the furnace. The electric wires inside the unit were severely burned. The nameplate on the furnace had been melted. Hilton didn't know the store was served with natural gas, but testified that gas heating devices were a major cause of fires in the United States.
MFA did not attempt to prove it made a separate investigation of the fire, and the evidence does not support the versions offered by their witnesses Hilton and Darnell. After the fire, the storeroom was filled with cartons of napkins, a case of matches, cans of motor oil, and other flammable substances. Except for a few scorched loose napkins none of these items had been moved to or placed at MFA's expert's projected point of origin. The fact that paper napkins with burned edges were found all over the storeroom was explained by one of plaintiff's experts. He testified that the stream of water thrown by the inch and a half water hose used by the Natchitoches firemen to extinguish the fire moved all loose items around the storeroom.
The gas furnace was located on the floor of the storeroom. This system had only a manual on/off switchonce turned on, it would not automatically shut off at a set temperature, but would continue heating until manually reset. When the building was constructed it appears the subcontractor failed to install several safety features in the furnace. Hilton and Darnell did not inquire, of plaintiff's employee who closed the store a few hours before the fire, whether the furnace had been turned on. In fact, the employee was not sure. He had been concerned that night with getting electric coolers and freezers back in operation. A power failure related to a tornado which struck Natchitoches that day or the night before had damaged the electrical system.
Plaintiff's fire expert, C. D. Miller, Sr. (Fire Chief and chief investigator for the Franklin, Louisiana Fire Department; retired District Fire Chief of Lake Charles Fire Department; former Deputy Fire Marshal for the State Fire Marshal's office; independent professional fire expert with experience in investigating the origin and causes of fires) and plaintiff's expert in central heating systems, Waddy Norman (a master electrician), pinpointed the origin of the fire in the heating system. Their testimony was convincing.
MFA failed to carry their burden of proof. They made no independent investigation, and the Fire Marshal's investigators' version of the fire was less convincing than that of plaintiff's two experts. There is no error in the judgment rejecting MFA's defense of arson.

Penalties
Plaintiff's claim for penalties is based on LSA-R.S. 22:658 which requires insurers to pay claims within sixty days after receipt of proofs of loss and demands therefor. When their failure to timely pay the claim is found to be arbitrary, capricious, or without probable cause, they owe a penalty of 12% on the total amount of the loss together with a reasonable attorney's fee for the prosecution and collection of the loss.
Penalties do not arise merely because the insurer is cast in judgment under the policy. They may be assessed only when the failure to pay is arbitrary and capricious. Wells v. Twin City Fire Insurance Company, 239 La. 662, 119 So.2d 501 (1960); Headrick v. Pennsylvania Millers Mutual Insurance Co., 257 La. 1101, 245 So.2d 324 (1971); Reed v. United States Fidelity & Guaranty Company, 302 So.2d 354 (La.App. 3 Cir. 1974).
*853 Plaintiff contends that having found coverage under the policy, we must determine whether MFA's action in denying the claim was arbitrary or capricious by looking to information MFA had when they denied the claim on June 25, 1974. Information received subsequent to suit which might give insurer a basis for contesting coverage does not exculpate insurer from such penalties. See: Stroud v. Tremont Lumber Company, 193 So.2d 86 (La.App. 2 Cir. 1966); Delafosse v. Industrial Painters, Inc., 199 So.2d 559 (La.App. 3 Cir. 1967); Tillman v. Royal Castle Systems, Inc., 203 So.2d 817 (La.App. 4 Cir. 1967); Zeringue v. Fireman's Fund American Insurance Company, 271 So.2d 613 (La.App. 1 Cir. 1972). Although the cited cases involve workmen's compensation claims, the stated holdings are equally applicable to suits on fire insurance policies.
Defendant has pointed to no law, and we know of none, authorizing an insurer to deny a claim on the basis that the Fire Marshal has not closed his file. The file on this case had not been closed when the case was tried.
MFA did not introduce evidence to suggest that it had a valid or reasonable basis upon which to reject plaintiff's proof of loss at the time it denied the claim. The proof of loss claim was filed some six weeks after the loss. The preliminary report from Hilton to the Fire Marshal's office (which did indicate a suspicion that plaintiff set the fire) was not filed until August 2, 1974, more than a month after MFA denied plaintiff's claim.
The trial judge interpreted MFA's action in paying Peoples Bank & Trust Company under the "loss payable clause" to be an act in good faith and evidence tending to refute the contention that MFA had been arbitrary and capricious. We differ. First, this payment came long after suit had been filed, and only one week prior to trial. Second, the payment was conditioned on the Bank's assignment of the notes to MFA.
MFA denied the claim without sufficient information to afford it a reasonable basis for the denial. The denial was arbitrary and capricious and subjects MFA to the penalties prescribed by LSA-R.S. 22:658.
We distinguish Headrick v. Pennsylvania Millers Mutual Insurance Company, 257 La. 1101, 245 So.2d 324 (1971) cited by MFA. In Headrick, the insurer never formally denied the claimit just failed to pay within the statutory 60-day period. Furthermore, the insurer in Headrick had before it prior to expiration of the 60-day period, sufficient information to justify its contest of the claim. The insurer established that it had received a report from a state policeman two weeks after the fire stating that he had observed two men setting the fire and the homeowner was one of the suspects. Later more information was received linking the homeowner to the fire. It was under these extraordinary circumstances that the Supreme Court rejected the claim for penalties. See 245 So.2d at 327. We do not have these extraordinary circumstances present in this case. MFA did not establish that it had a reasonable basis to suspect arson when it rejected plaintiff's proof of loss.

Attorney's Fee
Plaintiff's claim for attorney fees is based on LSA-22:658, which allows reasonable attorney's fees in addition to the 12% penalty. To assess a reasonable fee, we review the circumstances related to the case. Relevant are the importance and results of the litigation, the difficulties thereof, the degree of professional skill and ability required and exercised, the skill and experience of the attorney, the importance of the litigation to the parties involved, as well as the amount or values involved or recovered. The fee is determined by many considerations other than the time visibly employed in the litigation. Absent other evidence, the court will be guided in estimating the value of attorney's services by the time or amount of labor performed as indicated by the record.
*854 The record suggests plaintiff's attorney exercised a high degree of professional skill and ability. He recovered $45,363.09 for his client.
Two attorney's testified that they reviewed plaintiff's attorney's file, and based upon a minimum [NOTE: not moderate] fair charge of $50 per hour, a $10,000 to $15,000 fee would be generated over the period of the litigation. Tr. 43, 45. The defense did not challenge this testimony. Nothing in this record suggests that, based on a minimum hourly charge, a reasonable fee for the hours dedicated to this litigation should be less than $10,000.
In Redding v. Cade, 158 So.2d 880 (La.App. 3 Cir. 1963), this court, in effect, rejected the contingency basis for awarding reasonable attorney fees. In Redding, we were not favored with expert testimony as to a reasonable attorney's fee for that claim, and based solely on the record (since no one had reviewed plaintiff's counsel's file) we reduced the $5,000 fee awarded to $3,000.
It was established in this case that plaintiff was obligated to pay a contingency fee of $15,000. Both expert witnesses testified this contingent fee was reasonable in this case. We conclude, however, that a contingency fee contract is not the basis upon which a court is to determine "reasonable attorney's fees" as that term is used in LSA-R.S. 22:658.
Here, two expert witnesses testified that based upon the minimum reasonable hourly compensation rate for attorneys of $50 per hour, a fee of between $10,000 and $15,000 was indicated. While we are in no way bound to these sums, there is no evidence in this record to suggest that $10,000 is an unreasonable fee. Based on the testimony, other related factors, and appraising the amount of work disclosed by the record, we find that $10,000 is a reasonable attorney's fee.[1]

Expert Witness Fees
The trial judge awarded expert fees to plaintiff's fire expert (Cecil D. Miller) in the amount of $700; to plaintiff's heating expert (W. K. Norman) $200; and to plaintiff's real estate expert (Randy LaCaze) $75. MFA seeks to reverse the taxing of these fees as costs and alternatively to reduce the awards.
Setting expert fees and taxing them as costs are matters within the discretion of the trial court, and the appellate court will not disturb the award unless the record on appeal shows a serious abuse of discretion. Succession of Shaddinger, 215 La. 614, 41 So.2d 236 (1949); State, Department of Highways v. Riley, 143 So.2d 396 (La.App. 3 Cir. 1962); Barnett v. Barnett Enterprises, Inc., 231 So.2d 589 (La.App. 4 Cir. 1970). We find no abuse of the trial court's discretion.
We affirm the trial court judgment awarding plaintiff $45,363.09 together with legal interest from judicial demand, subject to a credit for $32,558.34 to MFA conditioned on MFA's return of the mortgage notes as "paid."
We also affirm that portion of the judgment fixing expert fees and taxing them as costs.
We reverse and set aside that portion of the judgment rejecting plaintiff's claim for penalties and his attorney's fee. Judgment is hereby rendered in favor of plaintiff awarding 12% penalties on the sum of $45,363.09. Plaintiff is also awarded $10,000 as his attorney's fee.
All costs of this appeal are to be paid by defendant MFA.
Affirmed, in part; and in part, reversed and rendered.

*855 ON APPLICATION FOR REHEARING
PER CURIAM.
Plaintiff Baghramain's application for rehearing argues that we should have awarded interest on the award of penalties and attorney's fee. Roberts v. Houston Fire & Casualty Company, 168 So.2d 457 (La.App. 3 Cir. 1964); Doty v. Central Mutual Insurance Company, 186 So.2d 328 (La.App. 3 Cir. 1966). We agree.
Our opinion is amended to award legal interest on the award of penalties and attorney's fee from date of judicial demand.
As amended, our original judgment is reinstated and both applications for rehearing are denied.
Decree amended and rehearings denied.
NOTES
[1] The author is of the opinion that the record requires a $15,000 attorney's fee.