542 So.2d 1129 (1989)
Howard J. FUQUA, et ux, Plaintiffs-Appellees,
v.
AETNA CASUALTY & SURETY COMPANY, et al., Defendants-Appellants.
No. 88-29.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
Rehearing Denied May 15, 1989.
*1130 Salter, Streete, Frank T. Salter, Steven W. Hale, Lake Charles, for plaintiffs-appellees.
Brame, Bergstedt, Joe A. Brame, Lake Charles, for defendant-appellant.
Wroten, Kivett, Dorothy K. Kyle, Baton Rouge, Raggio, Cappel, Stephen A. Berniard, Jr., Lake Charles, Charles R. Albright II, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
DOMENGEAUX, Judge.
This tort action arises from a two car collision which occurred at the intersection of La. Hwy. 385 and La. Hwy. 3092 in Calcasieu Parish on July 20, 1985. Howard Fuqua was traveling north on Hwy. 385, which is the favored street. Gloria Watson, a defendant, was traveling west on Hwy. 3092. The accident took place when Mrs. Watson apparently ran a stop sign and hit Mr. Fuqua's pickup truck broadside.
Suit was filed by Howard Fuqua and his wife, Lavonia Fuqua, naming as defendants the alleged tortfeasor, Gloria Watson; her husband and the owner of the vehicle which struck the plaintiff, John W. Watson; the automobile liability insurer of John W. Watson, Allstate Insurance Company; the uninsured motorist insurer of the vehicle driven by plaintiff and owned by plaintiff's employer Nash Industries, Aetna Casualty & Surety Company; and Mrs. Fuqua's personal UM carrier, Champion Insurance Company. Plaintiff's suit included a claim against Aetna for penalties and attorney's fees, as allowed by La.R.S. 22:658. Aetna asserted a third party claim against the Louisiana Department of Transportation and Development (DOTD), alleging that the intersection was improperly marked.
After trial on the merits, the jury returned a verdict in favor of the plaintiffs for general damages of $402,000.00 and special damages totalling $215,000.00.[1] The jury found that Aetna was arbitrary and capricious and assessed three percent comparative fault to the plaintiff. The Trial Judge then assessed a penalty of twelve *1131 percent ($62,587.63) and one-third attorney's fees ($173,854.52) in accordance with La.R.S. 22:658. Aetna appeals this adverse decision, raising numerous issues. No other party has appealed or answered the appeal. John and Gloria Watson have adopted the position advocated by Aetna in this appeal.
Aetna raises the following questions for our review:
(I) Did the jury err in finding only three percent comparative fault on the part of the plaintiff, Howard Fuqua?
(II) Did the Trial Court err in granting a directed verdict in favor of DOTD on Aetna's third party demand? Further, did the Trial Court improperly exclude expert testimony concerning the probabilities that one or both drivers would have obeyed appropriate traffic warnings?
(III) Did the jury abuse its discretion in awarding the plaintiff general damages of $402,000.00 and special damages of $215,000.00?
(IV) Did the Trial Court err in allowing plaintiffs' counsel access to Aetna's claim file?
(V) Did the jury err in determining that Aetna was arbitrary and capricious?
(VI) Did the Trial Court err in its assessment of penalties and attorney's fees?
For the most part, we find no error in the judgment of the lower court. We hold, however, that a modification in the award of attorney's fees is warranted.

I. COMPARATIVE FAULT
On July 20, 1985, Howard Fuqua was proceeding north on Hwy. 385 near the intersection of Hwy. 3092. As he approached the intersection, he encountered an advisory speed sign of 40 mph and flashing yellow lights on the side of the road. Elsewhere on Hwy. 385, the mandatory speed limit is posted as 55 mph.
As Gloria Watson proceeded west on Hwy. 3092, she approached this same intersection. She passed a "Stop Ahead" sign before reaching a stop sign which had flashing red lights above it. Mrs. Watson proceeded into the intersection without stopping and hit the right side of the plaintiff's truck. Mrs. Watson's negligence is clearly supported by the evidence and is essentially undisputed.
Aetna alleges that Mr. Fuqua was comparatively negligent in two respects. First, Mr. Fuqua may have been exceeding the advisory speed limit of 40 mph. Second, he did not exercise the necessary caution required of a motorist approaching an intersection controlled by a flashing yellow light. The jury agreed with the defendants on this point and assessed Mr. Fuqua's comparative fault at 3%. Aetna now contends that Mr. Fuqua should have been assigned 20-25% comparative fault. We affirm the jury's finding.
Allocation of fault under La.C.C. art. 2323 is a factual determination which will not be disturbed on appeal in the absence of manifest error. Benoit v. Hartford Casualty Insurance Company, 478 So.2d 707 (La.App. 3rd Cir.1985), writ denied, 480 So.2d 745 (La.1986); Triangle Trucking Company v. Alexander, 451 So.2d 638 (La.App. 3rd Cir.1984).
As we held in Fontenot v. Shelter Mutual Insurance Company, 499 So.2d 997 (La. App. 3rd Cir.1986), the requisite caution under La.R.S. 32:234[2] includes approaching at a reasonable speed and maintaining a proper lookout. The jury found that Mr. Fuqua's actions did not meet the level of caution required, but that such failure on his part amounted to only 3% of contributory fault. This is not manifestly erroneous.

II. DOTD
Aetna's second assignment of error concerns the alleged fault of DOTD in causing this accident. Aetna's two accident reconstruction *1132 experts testified as to the signs and lights located at or near this intersection. A traffic engineering expert, Dr. Olin Dart, testified as to the requirements of the Uniform Manual of Traffic Control Devices which was adopted by the State of Louisiana prior to this accident. After hearing all expert testimony, and considering it in light of the evidence concerning causation, the Trial Judge dismissed Aetna's third party claim against DOTD by granting a directed verdict in its favor. We agree with the Trial Court's ruling.
First, the Trial Judge properly concluded that the DOTD's failure to place the stop sign and caution signals at the height required by the Manual was not a contributing factor of this accident.
Second, DOTD had no duty to install larger traffic signals, an overhead flashing light, or a stop-go signal if such were not required by the Manual. The evidence clearly established that DOTD fulfilled its obligations as described in the Manual. That in itself is prima facia proof of DOTD's discharge "of its obligations to the motoring public." La.R.S. 32:235(E).
Third, Aetna complains about the distance from the intersection of both the "Stop Ahead" sign and the advisory speed sign. But Aetna's own expert testified that the location of both signs complied with the Manual. In view of this testimony, we find that the Trial Judge committed no error in dismissing Aetna's claim against DOTD.
Finally, Aetna asserts that the Trial Judge erred in sustaining DOTD's objection to a question posed to Dr. Dart as to whether different traffic control devices would have prevented the accident. The testimony was proffered and consisted of statistical possibilities. We have reviewed the proffered testimony and find no error in the lower court's ruling on the objection.

III. DAMAGES
Mr. Fuqua was awarded $215,000.00 in special damages and $402,000.00 in general damages. The special damages were clearly supported by the evidence and consisted of medical bills, past lost wages, and future lost wages. This award is affirmed.
The general damage award of $402,000.00 was likewise within the Trial Court's discretion. This plaintiff suffered a broken neck, a spinal cord contusion, a severe concussion, a 9 cm cut on his scalp through which the skull bone was exposed, a 2 cm cut on his cheek, a bruised kidney, and clonus. Mr. Fuqua was in traction for four weeks, during which time he remained flat on his back with tongs holding his neck and skull in the proper position. He developed bed sores. He was unable to take pain medication until his condition stabilized. A life threatening surgical procedure to repair the neck was performed one month after the accident; after surgery Mr. Fuqua remained hospitalized and immobile for eight days and was then instructed to wear a brace for six to eight weeks and a collar for several weeks thereafter. Mr. Fuqua had residual problems of post-concussion syndrome, tinnitus, diplopia, and stiffness. Although he made excellent progress, the plaintiff's pain lingered and the testimony reveals that he was still in pain at the time of trial. Finally, the range of motion in Mr. Fuqua's neck is permanently limited.
While we acknowledge that this award may be arguably high, we do not believe that it is so high as to be an abuse of discretion. Coco v. Winston Industries Inc., 341 So.2d 332 (La.1976); Andrews v. Mosley Well Service, 514 So.2d 491 (La. App. 3rd Cir.1987). writ denied, 515 So.2d 807 (La.1987).

IV. AETNA'S CLAIM FILE
The fourth issue raised by Aetna is whether the Trial Court erred in allowing plaintiff access to portions of Aetna's claim file. In keeping with our holding in McHugh v. Chastant, 503 So.2d 791 (La. App. 3rd Cir.1987), the Trial Judge conducted an in camera review of the file and allowed plaintiff to look at certain documents therein. This procedure was proper. As in McHugh, the plaintiff herein has raised a question as to the nature of the insurer's handling of the plaintiff's claim.
*1133 Aetna's claim file represents complete documentation of its action in handling the claim, and portions of the file are therefore discoverable.

V. ARBITRARY AND CAPRICIOUS
La.R.S. 22:658 requires insurers to pay the amount of any claim within sixty days. If a failure to pay timely is found to be "arbitrary, capricious and without probable cause," the insurer is liable for a penalty and reasonable attorney's fees. Aetna did not pay Mr. Fuqua's claim within sixty days, and its failure to do so was found to be arbitrary, capricious and without probable cause. We have determined that the record supports this finding.
This accident occurred on July 20, 1985. Aetna received notice of Mr. Fuqua's claim in early September 1985. In October of 1985, Aetna had determined that there was coverage for this accident and that the underlying policy limits did not provide sufficient coverage for Mr. Fuqua's injuries. Aetna assessed its exposure at one hundred percent, believing that Mr. Fuqua was not at fault. Aetna learned that Mr. Fuqua had not returned to work and was incurring a wage loss of $280.00 per week.
In early November, Aetna changed its approach and began to look for comparative negligence on the part of Mr. Fuqua. But the claim file contained references to Mrs. Watson's obvious negligence and Aetna's responsibility under R.S. 22:658. Aetna's investigation of Mr. Fuqua's claim consisted of a search for criteria which would justify only a modest tender to Mr. Fuqua. But no tender was made. Furthermore, Aetna's denial of the claim continued beyond the sixty day period allowed by statute. Aetna was under a duty to make a good faith unconditional tender in an amount "over which reasonable minds could not differ." McDill v. Utica Mutual Insurance Company, 475 So.2d 1085, 1092 (La.1985).
Aetna argues that it was unable to make such a tender because it had not been given sufficient facts to determine the extent of Mr. Fuqua's damages. This contention is without merit. Aetna was aware of Mr. Fuqua's ongoing wage loss and knew that as of September 1985, more than $20,000.00 in medical bills had accrued. There was no question that the plaintiff's damages had already exceeded the underlying coverage. The insurer in this case is bound, just as was the insurer in McDill, to tender a reasonable amount of general damages. Aetna could have avoided the penalty imposed by tendering a partial payment. When such partial payment was finally tendered in March 1986, it was too late. Belt v. Farm Bureau Insurance Company, 524 So.2d 1256 (La.App. 3rd Cir. 1988), writ denied, 526 So.2d 803 (La.1988). The record reflects no manifest error in the lower court's finding.

VI. PENALTIES AND ATTORNEY'S FEES
As its final assignment of error, Aetna asks this Court to review the assessment of penalties and attorney's fees. First, we affirm the award of a twelve percent penalty. The amendment to R.S. 22:658[3] providing for a ten percent penalty was not in effect at the time of Mr. Fuqua's claim for penalties and attorney's fees. The change from a twelve percent penalty to a ten percent penalty is substantive in nature and will not be applied retroactively. The jurisprudence of this State is well settled that "the rule of prospective application applies to laws that are substantive in nature." Graham v. Sequoya Corporation, 478 So.2d 1223 (La.1985).
Concerning the amount to which the twelve percent penalty should be applied, we turn to the language of R.S. 22:658. The statute is clear that the penalty shall be applied to the "difference between the amount paid or tendered and the amount found to be due." The lower court was correct in crediting Aetna with the $66,926.44 tender and the underlying Allstate coverage of $10,000.00. The twelve percent penalty was properly applied to the difference between that credit and the amount found to be due, $598,490.00.
*1134 We turn now to the question of reasonable attorney's fees. This Court has consistently held that a contingency fee contract is not to be used as "the basis for assessing reasonable attorney's fees under La.R.S. 22:658." May v. Market Insurance Company, 373 So.2d 763 (La.App.3rd Cir.1979), affirmed in part, reversed in part on other grounds 387 So.2d 1081 (La.1980). See also Baghramain v. MFA Mutual Insurance Company, 315 So.2d 849 (La.App. 3rd Cir.1975), writ denied, 320 So.2d 207 (La.1975), and Redding v. Cade, 158 So.2d 880 (La.App. 3rd Cir.1963), writ refused, 245 La. 811, 161 So.2d 281 (1964).
In Baghramain, we articulated the criteria for assessing reasonable attorney's fees:
Relevant are the importance and results of the litigation, the difficulties thereof, the degree of professional skill and ability required and exercised, the skill and experience of the attorney, the importance of the litigation to the parties involved, as well as the amount or values involved or recovered. The fee is determined by many considerations other than the time visibly employed in the litigation.
315 So.2d at 853. Considering these factors, we note that the record contains an itemized statement in the amount of $61,000.00. Plaintiff's counsel was well-prepared and thorough throughout the litigation and achieved a successful result for his clients. The case involved detailed expert testimony as well as technical medical evidence. It is evident that the contractual one third attorney's fee awarded in the amount of $173,854.52 is excessive under the jurisprudence. On the other hand, we feel that, considering all aspects of the attorneys' representation in light of the foregoing criteria, the itemized amount is insufficient. We find that attorney's fees in the amount of $100,000.00 are reasonable and will adequately compensate plaintiff's counsel for services at the trial level and on appeal.
It is ORDERED, ADJUDGED, AND DECREED that the judgment of the Trial Court be and the same is hereby amended to reflect a decrease in attorney's fees to $100,000.00; otherwise, the judgment of the lower court is affirmed.
All costs of this appeal are assessed against the appellants.
AFFIRMED, AS AMENDED.
NOTES
[1] Mrs. Fuqua was awarded $13,000.00 for loss of consortium. That award is not a subject of this appeal.
[2] La.R.S. 32:234 prescribes the duty of a driver faced with a flashing yellow light:

When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.
[3] Acts 1986, No. 132, § 1, effective June 26, 1986.