PETERS, Judge ad hoc.
This appeal is from a judgment awarding plaintiff benefits for total permanent disability and awarding plaintiff penalties and attorney’s fees under LSA-R.S. 23:1201.2. Defendant appealed from the judgment only insofar as it awarded penalties and attorney’s fees and assessed all costs against defendant. Plaintiff answered the appeal asking that the award for attorney’s fees be increased in view of the additional legal work required by the appeal.
Plaintiff injured his arm on October 19, 1973, while working for T & H Well Service, Incorporated, defendant’s insured. He was treated by Dr. Robert Luke Bordelon, an orthopedic surgeon. Dr. Bordelon found when he treated plaintiff on October 19 that plaintiff had an open fracture of the ulna of the left arm. Dr. Bordelon inserted a small pin into the arm to stabilize the ulna. Dr. Bordelon examined plaintiff from time to time thereafter and by January, 1974, had come to suspect that the portions of bone separated by the fracture were not rejoining. In an attempt to remedy this situation, Dr. Bordelon did a bone graft on February 14, 1974. In April of 1974 plaintiff was having trouble with the pin which had been inserted at the fracture site on the day of the accident so the pin was removed. By June of 1974 it began to appear that the first bone graft had not taken so a second bone graft was done on June 28, 1974. In August of 1974 plaintiff was examined by Dr. William Louis Meuleman, another orthopedic surgeon. Dr. Meuleman suggested a resection, or surgical removal, of the distal end of the ulna. On October 10, 1974, Dr. L. Lazaro III, also an orthopedic surgeon, performed a Darrach procedure, which is a resection of the distal end of the ulna back to the fracture site. Plaintiff was left with a permanent skeletal instability of the wrist due to the removal of part of the ulna. The ulna is no longer tied to the radius by ligaments. Dr. Lazaro tied the free end óf the ulna to a tendon to stabilize it somewhat, but the ulna is still quite unstable. Dr. Lazaro testified by deposition that plaintiff is disabled from doing heavy manual labor. Dr. Bordelon testified by deposition to the same effect. Plaintiff had worked as a roughneck before the accident. Drs. Bordelon and Lazaro submitted progress reports to defendant during the course of treatment. The last report was submitted by Dr. Lazaro on December 12, 1974. In this final report, Dr. Lazaro stated plaintiff had some instability around the wrist due to the resection and had about a 35% physical impairment to the function of the hand as a whole.
On February 12, 1975, plaintiff was reexamined by Dr. Meuleman at the request of defendant. Dr. Meuleman sent defendant a report in which, after setting out the patient’s medical history and the extent of examination, he expressed the following opinion:
“The writer feels that the disability to this extremity is as previously expressed, fifteen (15%) percent and this will remain permanent. As far as the patient’s complaints of loss of strength as (sic) concerned, the writer has no argument with this and fully appreciates that an individual who has not been able to use the extremity effectively for better than one year does have muscle wasting and the strength loss. The only way that it can of course be brought back is by return to work and the writer feels that the patient can return to work at this time without undue risk. Certainly pain fact- or of any consequence does not exist and in view of the fact that the patient’s only problem is. to regain strength and there is only one solution to the problem and that is to return to work and he will be *144 able to function quite satisfactorily in the future.”
Upon receipt of this report defendant ceased compensation payments.
The trial court held that Dr. Meule-man’s report did not establish plaintiff was able to resume the duties of his former employment and therefore defendant was not justified in terminating compensation payments based upon this report. We agree with this conclusion. The report indicates there was a permanent disability of fifteen percent to the extremity and that plaintiff was suffering from a loss of strength. It further indicates plaintiff will be able to “function quite satisfactorily in the future.” (Emphasis ours.) The report as a whole recommends work as the proper therapy for recovery of strength. Although it indicates plaintiff may return to work, it says he may do so “without undue risk”; it does not say he was able at the time of the report to accomplish his former duties.
Because defendant had no definite expression from Dr. Meuleman or from either of the other physicians that plaintiff’s disability had ended, it was incumbent upon defendant to inquire further to determine plaintiff’s true condition. Chavis v. Maryland Casualty Company, La.App. 3rd Cir., 1975, 307 So.2d 663; McClelland v. Liberty Mutual Insurance Company, La.App.2d Cir., 1965, 180 So.2d 19.
As previously stated, plaintiff answered the appeal asking for an increase in attorney’s fees. The trial court awarded $3282.00 and we think this amount sufficient compensation for all legal work done in the lower court and on appeal.
For the reasons assigned, the judgment of the lower court is affirmed at defendant-appellant’s costs.
Affirmed.