DOMENGEAUX, Judge.
This suit was instituted by William Har-kins against his employer, Continental Oil Company, and its workmen’s compensation carrier, Hartford Accident & Indemnity Company, to recover workmen’s compensation benefits. Judgment was rendered in favor of the plaintiff finding him to be totally and permanently disabled and entitled to benefits. In addition, penalties and attorney’s fees were awarded. Defendants bring this appeal from that judgment.
*1217 On January 28, 1978, William Harkins was employed as a truck driver by Continental Oil Company working out of Continental’s terminal in Westlake, Louisiana. On that date, Harkins and his co-driver, Dan Richardson, departed from the West-lake terminal en route to Avenal, New Jersey, to deliver drums of chemicals.
Plaintiff claims to have suffered an accident which caused injury to his cervical region and his right knee while assisting in unloading the drums in New Jersey on January 30, 1978.
At trial, the defendants strenuously argued that the plaintiff did not have an accident or suffer an injury to either the cervical region or his right knee. On appeal, the defendants concede that Mr. Har-kins did sustain an accident and that he possesses the cervical disability found by the trial court. Their argument is limited solely to the plaintiff’s knee injury and to the award of penalties and attorney’s fees.
The critical issue on appeal is whether the trial court erred in its determination that there was a causal relation between the plaintiff’s knee problems and the accident in New Jersey. This is essentially a factual determination. We agree with the following observations made by the trial court:
“. . . All issues are factual and present a rather classic example of the necessity for the Court to assess the credibility of witnesses, not only from their testimony, but also from their demeanor, forthrightness, evasiveness, sincerity or reluctance.

Defendant has vigorously attacked the credibility of plaintiff, both as to the occurrence and reporting of the accident and has demonstrated numerous inconsistencies in his testimony. The Court notes those inconsistencies but determines that they do not sustain defendant’s contention that no accident occurred. There is more than ample support of the claim of an accidental injury.
Plaintiff’s co-driver, Dan Richardson, testified that plaintiff had in the past performed his portion of their heavy and strenuous work well and without complaints; that plaintiff was all right on the trip to New Jersey but was in apparent pain returning; that plaintiff told him of the injury in the truck during the unloading operation and that he took over the remainder of the work because plaintiff was holding his arm and that he, Richardson, did most of the driving on the return trip and could hear plaintiff moaning in the truck cab sleeper. While this witness’ testimony was attacked on the basis of the driving time logs, it was apparent to the Court that he was being facetious when he refused to admit under oath to falsifying the logs. In fact, the Court found this witness’ testimony to be the most credible of all the many witnesses.

Plaintiff did sustain an accidental injury to his knee which resulted in an onset of symptoms resulting in unsuccessful surgery and is now totally and permanently disabled within the context of the Workmen’s Compensation Act.
The orthopedist who treated plaintiff and performed the orthopedic surgery, Dr. Drez, stated his opinion that ‘there is a great probability that a traumatic episode was responsible for the conditions I treated him for’.
Plaintiff obviously at first discounted the knee injury as being minor and also obviously exaggerated some of his later symptoms during his testimony. This, however, does not render all of his testimony uncredible. Mrs. Harkins saw the bruised knee shortly after his first hospitalization, showed it to Dan Richardson, and complained because plaintiff would not then call it to the attention of a doctor. The uncontradicted testimony of these two witnesses, taken with the testimony of Dr. Drez, so corroborates plaintiff’s testimony concerning the knee injury that the Court must accept his description of the accidental injury to the knee.

The standard of appellate review in Louisiana is well settled. In Canter v. Koehring *1218 Company, 283 So.2d 716, 724 (La.1973), the Supreme Court stated:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.”
This standard was further refined in Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978), when the Supreme Court added:
“ ‘Manifestly erroneous’, in its simplest terms, means ‘clearly wrong’. Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding of the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong.”
Our review of the entire record reveals that the decision of the trial court is not clearly wrong. It is well supported by the record.
The defendants argue that due to plaintiff’s inconsistencies we should apply the doctrine of “falsus in uno, falsus in omnibus” and disregard his testimony. While we recognize the validity of that doctrine in some circumstances, it is harsh and should be applied with caution. Bennett v. U. S. Fidelity & Guaranty Company, 373 So.2d 1362 (La.App. 1st Cir. 1979). There is sufficient corroboration of the existence of the accident and the extent of the plaintiff’s injury to conclude that the trial court was correct in not discrediting the plaintiff’s testimony. As stated, the trial court’s decision is well supported by the record.
The second issue before us is whether the trial court erred in awarding penalties and attorney’s fees. The trial court found that the employer, Continental, had ample information from the plaintiff regarding his injury. The trial court found that Continental’s inquiry was, at best, a cursory one and that it restrained its insurer from doing more. Regarding this issue, the trial judge stated:
“Defendant employer received ample notice from medical reports, and eventually from plaintiff directly, that he claimed job related injuries. They certainly received sufficient information, if only through medical information, to place them on such notice as to require an adequate investigation. Even after contact by plaintiff’s counsel requesting compensation and payment of medical expenses, the claim was denied.

Dan Richardson, plaintiff’s co-driver, testified that (apparently in mid July, 1978) he was called into the office of his boss, Marion Palmore, Continental’s Lake Charles transportation manager, and was directed to talk by telephone with the insurance adjuster, apparently Mr. La-ture, and gave him the same information concerning the accident as that to which he testified in court. This was done in the presence of Mr. Palmore. The adjuster was not called to testify and Richardson’s testimony on this information stands uncontroverted.
Thereafter Continental specifically denied compensation and still does so.
The failure and refusal to provoke an adequate investigation of plaintiff’s claim and the denial of compensation benefits in light of their knowledge of facts makes the refusal of benefits arbitrary and capricious and subjects defendants to statutory penalties and fees of plaintiff’s attorney.”
We note that the trial court further found that on the day the plaintiff returned to Lake Charles from New Jersey he went to see Doctor Bennerscheidt, Continental’s examining physician, and complained of his neck injury. Doctor Bennerscheidt referred the plaintiff to Doctor Litel, a neurosurgeon, who performed a cervical operation. Doctor Litel designated a 15 percent permanent partial disability as a result of the surgery. As stated earlier, the trial court’s finding of this cervical disability is not contested on appeal, but it does indicate the notice the defendants had regarding the plaintiff’s injury.
*1219 Defendants argue strenuously that the award of $7,500.00 for attorney’s fees was an abuse of discretion. We agree and reduce the attorney’s fees to the sum of $5,000.00. Concerning attorney’s fees, the trial judge made the following comments:
“The assistance rendered to plaintiff by his counsel, as demonstrated by facts revealed during trial, was exceptionally great prior to trial, was exceptionally great upon trial, which itself was unusually protracted and difficult. Counsel not only managed to get plaintiff to the hospital for surgery on his knee but succeeded in getting his hospitalization insurance reinstated after it was cancelled when the employer terminated him at the end of his job benefits period of six (6) months.
The work of the attorney for plaintiff prior to trial and under the eyes of the Court, together with the accomplishment, justifies, and the Court fixes, the fees of said attorney at $7,500.00.”
It is very evident from a review of the record that plaintiff’s counsel rendered substantial assistance to plaintiff in this hard fought case. The trial itself lasted three days. We are fearful, however, that the trial judge committed error when he considered certain efforts made by plaintiff’s counsel in order to have plaintiff’s hospitalization insurance reinstated after it was cancelled by the hospitalization insurance company. This of course had nothing to do with plaintiff’s workmen’s compensation claim.
In Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir. 1979), writ refused January 28,1980, we affirmed an award for attorney’s fees in a workmen’s compensation case in the amount of $5,000.00, citing four recent cases which had made similar awards. Our research on the subject fails to uncover any workmen’s compensation cases where attorney’s fees were awarded in a sum greater than $5,000.00.
Although we do not mean to suggest that $5,000.00 is a limit for attorney’s fees in workmen’s compensation cases, we feel that considering all aspects of this case, that such an award is proper and sufficient here.
For the above and foregoing reasons, the award for attorney’s fees rendered by the trial court is reduced from the sum of $7,500.00 to the sum of $5,000.00. Otherwise, the District Court judgment is affirmed.
Costs on appeal are assessed four-fifths to defendants-appellants, and one-fifth to plaintiff-appellee.
AFFIRMED, AS AMENDED.