CUTRER, Judge.
John D. Fish filed two suits for workmen’s compensation benefits. The first suit was filed against Fireman’s Fund Insurance Company (Fireman’s Fund), the insurer of Kaough & Jones Electric Company (Kaough *150 & Jones), for disability benefits arising out of an accident occurring on September 7, 1976. The second suit by Fish was filed against Commercial Union Insurance Company (Commercial Union), the workmen’s compensation insurer of Fred Watson Electric Company (Fred Watson), seeking disability benefits arising out of an accident occurring on April 8, 1978 while Fish was employed by Fred Watson.
In the second suit, Commercial Union answered the suit and filed a third party demand against Bechtel, Inc. and Kaough & Jones, contending that any disability that Fish experienced after the accident of April 8, 1978, was contributed to or caused by accidents Fish suffered while employed by Kaough & Jones, occurring on September 7, 1976, and while employed by Bechtel, Inc., occurring during October or November of 1978.
The two suits were consolidated for trial. The trial court rendered judgment dismissing Fish’s first suit against Fireman’s Fund, the workmen’s compensation carrier of Kaough & Jones.
In the second suit, the trial court rendered judgment in favor of Fish and against Commercial Union, awarding total permanent disability benefits, medical expenses, penalties and attorney’s fees. The trial court judgment in the second suit also dismissed the third party demand of Commercial Union against Bechtel, Inc.[1] and Kaough & Jones.
Commercial Union contends on appeal that, while Fish was injured in a work-related accident on April 8, 1978 when he was working for Fred Watson, the disability resulting therefrom did not extend beyond May 1978, the time of termination of compensation payments by Commercial Union. In the alternative it is contended that both accidents contributed to the disability and that both employers should contribute to any compensation benefits owed.
The issue presented is whether Fish’s disability resulted in whole or in part from the first accident (Kaough & Jones accident) or whether such disability is attributable to injuries received in the second accident (Fred Watson accident).
The issue is also presented as to whether penalties and attorney’s fees should have been awarded.
The issues are factual. The trial judge evaluated the medical and lay testimony and, in written reasons for judgment, made the following observations, with which we agree, as to the occurrence of the two accidents and their effect upon Fish’s ability to work.
“The evidence discloses that the plaintiff did suffer an accident in either September or October of 1976 while employed by Kaough and Jones Electric Company. According to Mr. Fish, he was climbing a ladder intending to change a light when he hit his head on an overhanging concrete beam. At that time he felt a popping and burning sensation in his neck. He consulted a Dr. Reaux who advised him to remain off the job for a few days. Thereafter, plaintiff returned to work for his employer, Kaough and Jones Electric Company but left after a month or so to go to work for Fred Watson Electric Company as a foreman. Plaintiff testified that he worked steadily for Fred Watson Electric Company, except for a short period in August of 1977, until he experienced the second accident in April of 1978. During this period of time (September, 1976 — April, 1978) plaintiff testified that he had pain in his neck and shoulders but he continued to work at his trade as an electrician. He did go into the hospital in August of 1977 when a myelogram was run by Drs. Borne and Foster with negative results. He also consulted Dr. Oates in Houston on two occasions and as a matter of fact, had an appointment scheduled with him at the time of the second accident.
*151 “After hearing all of the evidence the Court concludes that plaintiff was experiencing some discomfort after his first accident up until the time of the second accident but that during this period of time he was fully able to perform his duties as a construction electrician. Under these circumstances, the Court is of the opinion that at the time of the second accident, although he may have been experiencing some discomfort and pain, the first accident did not render Mr. Fish disabled within the meaning of the workmen’s compensation act. The Court also finds that Mr. Fish’s difficulties subsequent to the second accident were not as a result of the first accident.
******
“According to the plaintiff, his second accident occurred when he was hurrying down an iron stairway covered with soda ash and wet with dew. As he neared the bottom of the stairway, his feet slipped out from under him causing him to fall a distance of approximately three feet and he landed in a sitting position. It is to be noted that Mr. Fish is a very large person weighing approximately 250 pounds and whose height is 6 foot 6 inches.
“Although plaintiff received emergency treatment at West Calcasieu-Cam Hospital and was released, he testified he experienced severe pain in his neck, shoulders and lower back, numbness of the legs and a tingling sensation in his hands. Subsequently, he sought treatment from or was evaluated by numerous orthopedic surgeons, neuro-surgeons, psychiatrists, pain specialists and the like. At trial most of these doctors either testified in person or by deposition. It has been demonstrated to the Court that even among experts there are degrees of expertise.
“The Court does not feel it necessary to go over the opinions and findings of each of the medical experts, counsel have ably done this in their memoranda. The Court does find, as Mr. Fish testified, he has been subject to disabling pain as a result of the accident of April 8,1978. The only relief that he has had has been as a result of medication prescribed by Dr. Rathmell and certain treatment given by Dr. Ralph F. Rashbaum of Plano, Texas. Dr. Rashbaum is an orthopedic surgeon who specializes in spinal disorders, neck pain, back pain, and, in his words, ‘things like that’. Dr. Rashbaum was successful in relieving Mr. Fish from some of his pain and prescribed a TNS unit. He explained that TNS is an abbreviation of ‘transcu-taneous nerve stimulator’. The purpose of this device is, by means of electrical shock, to interrupt a transmission of pain from an area to the brain. The Court was very impressed with the testimony of Dr. Rashbaum. It is unfortunate that plaintiff was not financially able to continue the treatment prescribed by this physician.
“Plaintiff testified that he attempted to work on at least two occasions after the second accident but could not continue to do so because of pain even though he wore the TNS unit. This Court concludes that plaintiff is totally and permanently disabled as a result of the accident of April 8, 1978.”
The trial court’s conclusion that Fish •was totally and permanently disabled and that such disability is attributable to the injuries received in the April 8, 1978 (Fred Watson) work-related accident is fully supported by the testimony of lay witnesses and the physicians.
Two fellow employees, who worked with Fish for Fred Watson, testified that during the months that Fish worked for Fred Watson prior to April 8, 1978, Fish had some complaints with his neck but such did not interfere with his ability to perform his regular duties as a full time electrician. Fred Watson, the employer also testified to substantially the same facts as the employees.
Also, Donald Chamblee, a Kaough & Jones supervisor, testified that Fish continued to perform his work adequately following his 1976 accident until the job terminated in December of that year.
*152 There is a conflict of testimony among the physicians as to what part, if any, that the first accident may have played in contributing to Fish’s disability. The medical testimony is relatively consistent that Fish was disabled from performing his work after the April 8, 1978 accident.
Fish consulted with Dr. Borne, a neurosurgeon and partner of Dr. Foster, on August 3, 1977, after the Kaough & Jones accident. Fish was complaining principally of neck pain. Dr. Borne performed a mye-logram which was normal. Fish was referred to Dr. Bar-Sela of Houston who performed a special examination of the cervical region. This physician diagnosed peripheral neuropathy. Dr. Foster testified that this problem was not related to any trauma nor would it be affected by trauma.
Dr. Foster saw Fish after the Fred Watson accident in December 1979. He stated that the problem plaintiff was experiencing, affecting principally the back region, was not related to the injury received in the Kaough & Jones accident of 1976. This physician related the condition and disability of Fish solely to the Fred Watson accident of April 8, 1978.
Dr. James Oates, a specialist in physical medium and rehabilitation, saw Fish on February 28, 1978 (IV2 years after the 1976 accident). This physician found muscle inflammation in Fish’s neck and between his shoulder blades. Dr. Oates also saw Fish on April 17,1978, shortly after the second accident. He felt that the second accident had aggravated Fish’s pre-existing condition which was caused by the first accident. Commercial Union relies heavily on Dr. Oates’ testimony to support this position. Dr. Oates was the only physician who took the position that the injuries received in the second accident aggravated a pre-existing condition caused by the first accident.
Fish consulted with Dr. Aretta J. Rath-mell, a psychiatrist, on July 26, 1978. She was still seeing plaintiff at the time of the trial. Her impression was traumatic muscular skeletal injury and secondary psychosomatic reaction. She felt that his mid-thoracic pain was the pain giving him the greatest problems. When she first saw him she sent him to see Dr. Rashbaum in Plano, Texas for evaluation. Based on Rash-baum’s and her own evaluations she felt that plaintiff was suffering severe pain of the back and that there was both psychiatric and an organic basis for that pain.
She stated that since she has started treating plaintiff he has never been capable as working as an electrician on a day to day basis. In fact, she testified that Fish was unable to do any kind of work. She thinks that Fish could be treated in two ways. Both approaches are directed at destroying the function of the sympathetic nervous system, one' through surgery, the other through injections. She believes that Fish’s psychological problems would be quickly resolved if his pain was relieved. She stated that his psychological problems seem to have arisen only after the April 8, 1978 accident, getting progressively worse.
The plaintiff saw several other physicians, who testified herein. We have reviewed that testimony but feel that it is unnecessary to discuss the testimony of each of them. Suffice it to say that a review of the record reflects that the trial judge was correct in the conclusions he reached.
In summary, Fish’s complaints following the Kaough & Jones accident were confined principally to the cervical region. He incurred some discomfort and pain as a result thereof but such was not a substantial pain that would interfere with the performance of his normal duties as an electrician. Following the Fred Watson accident, Fish’s major complaint was in the upper and lower back regions. This injury created both psychiatric and organic problems which clearly disabled Fish from performing his duties as an electrician. This disability will ensue for an indefinite time in the future. Such disability was caused by the Fred Watson accident, thus, the trial court judgment was correct in its conclusions.
“... ‘The reviewing court must give great weight to the factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferences of fact should not be *153 disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable.’ .. ..”
West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La. 1979).
ATTORNEY’S FEES
We now turn to the question of whether or not the trial court correctly determined that Commercial Union was arbitrary and capricious in its termination of compensation benefits and refused to pay medical expenses.
Commercial Union has consistently refused to pay certain medical expenses. Dr. Rashbaum was still owed over $1,400.00 at the time his deposition was taken. Fish indicated that he had to pay many of his medical bills by borrowing from relatives. Fish, as well as Dr. Rathmell, testified that he has had to forego needed treatment because of a lack of funds. According to Dr. Rathmell, Fish’s financial circumstances have contributed greatly to his psychological problems.
Commercial Union attempts to justify its termination of compensation on May 3,1979 by pointing to Dr. Campbell’s release of Fish to return to work as early as September 11, 1978. Dr. Campbell specifically limited his findings as being from the orthopedic standpoint. Fish, however, had become Dr. Rathmell’s patient by July 1978. This physician never considered Fish able to return to work. With any investigation at all, Commercial Union could have discovered that Fish had trauma related problems which clearly reflected that Fish was disabled at the time the compensation payments were terminated.
As stated by the trial court:
“... where there has been no definite expression from the treating physicians that plaintiff’s disability had ended, it was incumbent upon defendant to inquire further to determine plaintiff’s true condition.”
Thibodeaux v. Home Indemnity Company, 331 So.2d 142 (La.App. 3rd Cir. 1976), writ den., 334 So.2d 433 (La. 1976).
No such inquiry was made by Commercial Union. Thus we find that Commercial Union was arbitrary and capricious in terminating compensation benefits and is thus liable for penalties and attorney’s fees.
We find, however, that the trial court’s award of $10,000.00 attorney’s fees is excessive. The case was a three day trial and involved a substantial amount of preparation and travel. We must note, however, that the trial involved two consolidated cases filed by Fish, one of which was dismissed. No attorney’s fees can be allowed for the unsuccessful trial of that case. We accordingly reduce the award of attorney’s fees to $5,000.00.
As we stated in Harkins v. Continental Oil Co., 385 So.2d 1216 (La.App. 3rd Cir. 1980), we do not mean to suggest that $5,000.00 is a limit for attorney’s fees in workmen’s compensation cases, we simply find that considering all aspects of the ease, that such an award is proper and sufficient here.
For the foregoing reasons, the award of attorney’s fees rendered by the trial court is reduced from the sum of $10,000.00 to $5,000.00. Otherwise, the District Court judgment is affirmed. The costs of this appeal are assessed four-fifths to defendant-appellant and one-fifth to the plaintiff-appellee.
AFFIRMED AS AMENDED.

. The evidence is clear that Fish was not involved in any work-related accident while he worked for a short time for Bechtel. The dismissal of Bechtel is not at issue on appeal and will not be pursued any further herein.