CUTRER, Judge.
This is a suit for workmen’s compensation benefits in which the plaintiff, Catherine Monk Lewis, alleges that she injured her back while at work on April 8, 1981, and *389 that, as a result of this injury, she is totally disabled. At the time of the incident plaintiff was employed as an instructing registered nurse by Rapides Parish School Board (School Board).
Select Insurance Company (Select) was the workmen’s compensation insurance carrier for the School Board on the date of this incident. Select, along with the School Board, was made party-defendant.
The trial court rendered judgment in plaintiff’s favor determining her disability to be total and permanent and awarding the appropriate benefits. The trial court’s judgment additionally ordered the School Board and Select to pay plaintiff $1,245.67 as medical and travel expenses, and to pay a penalty of twelve percent on the following unpaid or untimely paid items: $25.00; $42.84; $1,707.00; $2,342.85 and $7,102.14. Further, the judgment ordered Select to pay $7,500.00 in attorney’s fees.
The School Board and Select have appealed presenting the following issues:
(1) Whether the trial court erred in holding the plaintiff was disabled during the time she returned to work as a nurse at Lake Charles Memorial Hospital;
(2) Whether the trial court erred in awarding the plaintiff $1,155.00 for expenses of household help while she was recuperating from surgery; and
(3) Whether the trial court erred in finding the defendants were arbitrary and capricious in their failure to compensate plaintiff and, in the event it is held that attorney’s fees are due, the defendants contend the award of attorney’s fees was excessive.
Plaintiff answered the appeal seeking an increase in attorney’s fees.
FACTS
Plaintiff is a twenty-eight year old registered nurse. At the time of the incident in question she was teaching a nursing course for the Rapides Parish School Board. This class encompassed academic and clinical instruction.
On the morning of April 8,1981, plaintiff and her class were at the Veterans Administration Hospital in Pineville, Louisiana, for clinical instruction. It is undisputed that on this morning plaintiff was demonstrating how to transfer an incapacitated patient from one place to another and, in doing so, plaintiff experienced a “grabbing” pain in her lower back. The pain subsided until almost an hour later when plaintiff was entering an automobile at which time she experienced pain in her lower back and upper right leg. Plaintiff made this experience known to one of her students.
Later that day plaintiff picked up her employer’s first report of injury form. School Board secretary, Judy Despino, dispensed the form to plaintiff that day and later delivered the completed form to Richard Sasser, the School Board director of personnel.
That same afternoon, plaintiff, eight months pregnant, reported the injury and pain to her obstetrician, Dr. William Long. He advised plaintiff not to have x-rays performed because of her pregnancy and not to return to work. With only one day of work remaining before she began her maternity leave, plaintiff returned to the classroom the day after the accident.
Plaintiff informed Sasser of her obstetrician’s advice to postpone the pursuit of a diagnosis of her back pain. She then told Sasser to hold her first report of injury until after the birth of her child.
Plaintiff was seen the day after the birth of her child by an orthopaedist, Dr. L. Donovan Perdue. His report reflected that plaintiff reported suffering back pain throughout her pregnancy which became worse after the incident in question. Dr. Perdue diagnosed possible lumbar disc bulge and continued to treat plaintiff until October 8,1981. This report, dated December 1, 1981, stated that plaintiff should be able to return to work, avoiding excessive bending and lifting.
Plaintiff and her family moved to Lake Charles, where plaintiff attempted to return to work on a part-time basis on December 19, 1981, at Lake Charles Memorial *390 Hospital. Plaintiff’s back pain made even this part-time work difficult.
The pain continued to increase. On February 11, 1982, plaintiff saw Dr. Clark A. Gunderson, an orthopaedic surgeon in Lake Charles. In his deposition Dr. Gunderson identified his initial impression of plaintiff’s trouble as a lumbar straining injury with nerve root irritation.
Dr. Gunderson next saw plaintiff on February 23, 1982, and suggested a hospital study. After various tests were performed plaintiff underwent surgery on March 10, 1982. Dr. Gunderson explained that he removed sixty to seventy percent of the width of a pedicle of the spinal canal on which a nerve had become impaled.
Dr. Gunderson assigned the plaintiff a twenty percent permanent partial disability. He recognized plaintiff’s need to return to work but recommended that she avoid repetitive lifting, climbing, bending and stooping.
Suit was filed on November 16, 1981. Judgment was rendered October 6, 1982. This appeal followed.
DISABILITY
The School Board and Select allege the trial court erred in holding that plaintiff was disabled during the time she worked as a nurse at Lake Charles Memorial Hospital (December 19, 1981 — February 7, 1982). The School Board and Select base their contention on plaintiff’s employment application at Lake Charles Memorial Hospital. In this application plaintiff identified her back trouble but stated she did not have any physical limitations. Plaintiff stated her doctor had released her regarding this incident and plaintiff further classified her present health as “excellent.”
Additionally, the School Board and Select point to employment records of Lake Charles Memorial Hospital which fail to identify any problems or limitations with plaintiff’s work.
The trial court’s reasons for judgment explained its finding of total permanent disability, including the period of December 19, 1981 through February 7, 1982. The reasons properly dispose of Select’s first issue as follows:

“The court was impressed by plaintiffs sincerity. The court accepts her testimony as truthful. Further corroboration was offered by her husband, who testified that since the injury her complaints have been of constant pain. She has been unable to do much work around the house, so he has taken over the housework and most of the physical care of the children.

“The court is convinced that the evidence and testimony, both medical and lay, presented at trial supports its conclusion that plaintiff is totally and permanently disabled by reason of substantial pain. The law is clear that a worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Wilson v. Ebasco, Services, Inc., 393 So.2d 1248 (La.1981); Whitaker v. Church’s Fried Chicken, Inc., 387 So.2d 1093 (La.1980).
******

“[Ajlso, defendants rely upon certain statements made by plaintiff in her application for employment at LCMH as positive proof that her health at the time was excellent and that she was not suffering any back pain before her employment there.

“The court cannot agree with defendants’ theory that the plaintiff completely recovered from her injury of April 8th. The testimony and reports of Drs. Perdue and Gunderson negate any such speculation. The defendants’ reliance on plaintiff’s statements in the employment application is misplaced. Her explanation of her statements is more than credible: her family was in financial straits; she needed the job and she doubted that LCMH would employ her if she told the truth about her condition.”

In considering these conclusions, “... ‘The reviewing court must give great weight to the factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferenc *391 es of fact should not be disturbed even though the appellate, court may feel its own evaluations and inferences are as reasonable.’ .... ” Fish v. Commercial Union Assur. Co., 398 So.2d 148 (La.App. 3rd Cir. 1981), quoting West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). The trial court’s conclusions as to disability, including the period of December 18, 1981 through February 7, 1982, will not be disturbed.
PENALTIES AND ATTORNEY’S FEES
In assessing the penalties and attorney’s fees of LSA-R.S. 22:658, the trial judge’s reasons for judgment stated:

“Finally, the court must address the issue of penalties and attorney's fees, provided by LSA R.S. 22:658. The purpose of that statutory provision is to discourage an attitude of indifference toward a disabled employee and to encourage prompt payment of legitimate claims. The court finds that it agrees with plaintiff’s characterization of the insurer’s attitude as grossly callous and indifferent. The totality of the facts show far more than a mere ‘breakdown of communication’, as defendants plead in their brief.”

The record shows that the School Board first had notice of plaintiff’s injury the day it occurred. Plaintiff attained a first report of injury form from secretary, Judy Despino, at the School Board offices. This report was returned in completed form to the office on April 10, 1981. The report reached Richard Sasser’s desk on April 13, 1981. Sasser is the associate superintendent of personnel for the School Board and has handled the workmen’s compensation claims against the School Board for a couple of years.
Sasser testified that in his discussion with plaintiff regarding her back injury plaintiff informed him of her obstetrician’s advice against orthopaedic treatment for her back during her pregnancy. Sasser also stated plaintiff told him to “hold” the report of her injury until after the birth of her child.
Sasser then testified that he received plaintiff’s first medical bill on September 17, 1981: Sasser stated he forwarded all bills to Turrentine Insurance Agency, Select’s workmen’s compensation agent for the School Board. Sasser finally admitted he did not know why plaintiff’s hospital bills (received by him on March 17, and April 1, 1982) were not paid until June 29, 1982, and why some of plaintiff’s medical and travel expenses have yet to be paid.
Barbara Worley, a claims examiner for Gulf, handled plaintiff’s claim. Worley testified that she first saw plaintiff’s claim in September 1981, but that she could not locate plaintiff’s first report of injury at that time. Worley stated she first received a report from Dr. Perdue on September 22, 1981, and ordered it paid on October 4,1981.
Worley next testified that she received a letter of representation from plaintiff’s attorney on November 5, 1981. At this time she contacted Crawford and Company to do a full investigation.
Worley stated that they did not pay any compensation benefits in response to plaintiff’s demand letter because Select had no statement from plaintiff indicating she was currently disabled and had no information that plaintiff had lost time because of injury. The next information Worley received was that suit had been filed in this matter.
Worley stated that, after consultation with its attorney, Select began paying compensation benefits to plaintiff on February 23, 1982. The initial payment of $4,727.80 covered the period of April 8 through October 8, 1981, and February 8 through February 26, 1982. From this point forward Select paid plaintiff weekly compensation of $163.00. Worley stated Select refused to pay plaintiff for the period of October 8 through December 18, 1981, because they assumed plaintiff had been released to return to work by Dr. Perdue. Worley then admitted Select sent plaintiff a check of $1,630.00 on June 18,1982, as compensation for this period.
Regarding plaintiff’s hospital bills for surgery Worley testified the two April bills were not paid until June 4, 1982, because Select has a policy of withholding payment on bills in excess of $500.00 until the hospi *392 tal records are received. Worley admitted she knew on February 23, 1982, that plaintiff was going into the hospital.
From the above testimony it can be seen that the defendants had notice of plaintiff’s injury on April 8,1981, and began receiving medical information regarding her condition on September 22, 1981. Defendants received its first report from their hired investigators on November 18, 1981, and received a rather complete report on December 14, 1981. Still, defendants did not begin paying compensation benefits until February 23, 1982.
The record further reflects that medical bills of $259.00; $321.66; $25.00; and travel expenses of $13.44 were not reimbursed or paid as of the date of the trial. Medical bills of $1,707.00 and $2,342.85 were not paid within sixty days of receipt of said bills by defendants.
“A trial court’s determination that a refusal to pay benefits is arbitrary, capricious and without probable cause is partially a factual determination which will not be disturbed in absence of manifest error.” Lastrapes v. CNA Ins. Co., 426 So.2d 741 (La.App. 3rd Cir.1983); Lofton v. Louisiana Pacific Corp., 410 So.2d 1171 (La.App. 3rd Cir.1982). A review of the record reflects that the trial court’s determination that defendants were arbitrary and capricious in handling this matter is not manifestly erroneous.
Finally, plaintiff and defendants appeal the amount of the attorney’s fees awarded, $7,500.00. Defendants contend this award is excessive. Plaintiff answered the appeal seeking an increase in this amount for attorney services on appeal.
Considering the record of this case and the jurisprudence on the subject we feel that the award was an abuse of the trial court’s discretion. This case did not involve a lengthy trial or any unusual circumstances justifying $7,500.00 as attorney’s fees. The trial only lasted one day. The medical evidence consisted of physicians reports except that of Dr. Gunderson, which was submitted by deposition. We feel an award of $5,000.00 would fully compensate counsel for his time for the trial and appeal.
Defendants also appeal the trial court’s award of $1,155.00 as compensation for plaintiff’s expenditures on housekeeping services during plaintiff’s incapacity. The trial court cited the case of Cottonham v. Rockwood Ins. Co. of Pa., 403 So.2d 773 (La.App. 3rd Cir.1981), cert. den., 407 So.2d 732 (La.1981), as authority for awarding this amount under LSA-R.S. 23:1203. In construing Cottonham, the trial court, in its reasons for judgment, stated:

“[T]he court found that La.R.S. 23:1203 required the employer to reimburse plaintiff their expense because his physician prescribed them and they were necessary for his rehabilitation and safety.”

In response to questions on this issue in his deposition, Dr. Gunderson responded as follows:

“Q. ... You felt it was a medical necessity after her surgery that she have help in her housekeeping?

“A. Yes.

“Q. And how long in your opinion would this household help have been necessitated following her discharge from the hospital?

“A. About six weeks.”

Our consideration of the facts of this case and this portion of the trial court’s award leads us to the conclusion that this case can be distinguished from Cottonham. The case involved a paraplegic who was awarded compensation to cover the expenses of an emergency telephone device and of the installation of a ramp and hand controls on his van. Those two devices can be likened unto prosthetic assistance to a - paraplegic. Housekeeping help cannot be classified as being similar to prosthetic assistance. If we classify housekeeping help as medical expense, we would be opening a*, door to unlimited claims such as a claim by a person that, due to disability, had to employ additional help to carry on his work or business. This type of expense cannot be classified as a medical expense under the workmen’s compensation act.
*393 We do not construe Cottonham so as to provide authority for the trial court’s award of $1,155.00 to plaintiff under LSA-R.S. 23:1203. Accordingly, the trial court’s judgment insofar as it awards $1,245.67 as medical and travel expenses shall be amended to reduce this amount to $90.67 ($1,245.67 less $1,155.00).
For the reasons assigned the judgment of the trial court is amended by reducing the amount of the medical expenses awarded from $1,245.67 to $90.67 and by reducing the attorney’s fees from $7,500.00 to $5,000.00. In all other respects the judgment of the trial court is affirmed. The plaintiff-appellee and defendants-appellants are each to pay one-half of the costs of this appeal.
AMENDED AND AFFIRMED.